LARSON v. EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—ECONOMIC STRESS.

Economic stress from involuntary unemployment was considered by the legislature in providing for payment of unemployment compensation benefits (CL 1948, § 421.2).

2. SAME—SETTLEMENT AGREEMENT FOR WORKMEN'S COMPENSATION—VOLUNTARILY LEAVING WORK—DISQUALIFICATION FOR BENEFITS.

Signing of settlement agreement for workmen's compensation which also included a resignation from the employment and waiver of seniority with the employer, signed by employee who had sustained a back injury at appellant's foundry disabling him from work of making cores and wheeling core boxes, involving standing and lifting weights in excess of 25 pounds *held*, not to have been a voluntary leaving of work in view of the circumstances under which the agreement was arrived at and executed, hence plaintiff was not disqualified from receiving unemployment benefits (CLS 1956, § 421.29).

3. SAME—CONSTRUCTIVE VOLUNTARY LEAVING WORK—DISQUALIFICATION FOR BENEFITS.

Constructive voluntary leaving of work is not an accepted doctrine for amending or broadening plain language of statute disqualifying a person from receiving unemployment compensation benefits (CLS 1956, § 421.29).

Appeal from Muskegon: Beers (Henry L.), J. Submitted Division 3 January 5, 1966, at Grand Rapids. (Docket No. 940.) Decided March 22, 1966.

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 10.
[2, 3] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 35.

Certiorari by Paul A. Larson against the Appeal
Board of the Employment Security Commission and
Campbell, Wyant & Cannon Foundry Company,
Division of Textron, Inc., to review denial of unem-
ployment compensation benefits to claimaint.   Order
entered reversing appeal board.   Campbell, Wyant
& Cannon Foundry Company appeals.   Affirmed.

*Marcus, McCroskey, Libner, Reamon, Williams &
Dilley (Jerry S. McCroskey, of counsel)*, for plain-
tiff.

*Frank J. Kelley*, Attorney General, *Robert A. Der-
engoski,* Solicitor General, and *Arthur W. Brown,*
Assistant Attorney General, for defendant appeal
board.

*Varnum, Riddering, Wierengo & Christenson
(Carl E. Ver Beek, of counsel)*, for defendant Camp-
bell, Wyant & Cannon Foundry Company, Division
of Textron, Inc.

FITZGERALD, J.   The duties of claimant-appellee,
Paul A. Larson, in the Campbell, Wyant & Cannon
Foundry from July 11, 1962, for the duration of his
employment, consisted of making cores and wheel-
ing core boxes, involving standing and lifting weights
in excess of 25 pounds.

On March 6, 1963, claimant reported a back in-
jury and after examination by the company doctor
and his own physician, the claimant stopped working
on April 3, 1963.

The substance of medical statements was that he
was unable to continue working and that his back
trouble would never improve "beyond a point."

His doctor furnished a statement authorizing light
work, but no such work was available and he re-

mained on a lay-off or medical leave status, never actually returning to work for the appellant.

On April 17th, a determination was made that he was entitled to workmen's compensation benefits because of the back injury and he was also granted unemployment compensation benefits, the State law at that time permitting recovery of both workmen's compensation and unemployment compensation benefits simultaneously in situations of limited disability.

On May 17, 1963, the claimant signed a written statement entitled "Resignation of employment and waiver of seniority" for a total settlement of $2,000. This resignation read as follows:

"The undersigned, Paul Larson, because of physical inability to perform the work required at Campbell, Wyant & Cannon Foundry Division of Textron hereby resigns his employment and waives all seniority with Campbell, Wyant & Cannon Foundry Division of Textron and agrees that any contract of hire he may have or has had with Campbell, Wyant & Cannon Foundry Co. Division of Textron is terminated upon the approval of the workmen's compensation department of an agreement to redeem liability in the amount of $1,142 based on an injury of March 6, 1963.

"If the workmen's compensation department does not approve the said agreement to redeem liability then this resignation and waiver of seniority are void and of no force or effect.

"Dated this 17 day of May, 1963.

"PAUL A. LARSON"

The employment security commission issued a redetermination on June 19th confirming prior determinations holding that claimant was eligible for unemployment compensation benefits.

This redetermination was appealed for a referee's hearing, and on September 20, 1963, following a

hearing, the referee affirmed the redetermination allowing benefits.

On January 21, 1964, the MESC appeal board reversed the referee's decision and held that the claimant was not qualified for benefits. The appeal board's decision was reversed by an order of the circuit court for the county of Muskegon on May 3, 1965, and this decision comes to us on appeal.

In reversing the board, the trial court stated as follows:

"It seems to me in examining this file that any holding that this man voluntarily left his employment would be against the great and overwhelming evidence in this case. Whether you call it the great weight of the evidence or whether you call it a matter of law I don't think it makes much difference."

The court's order, entered May 18th, stated that the decision of the Michigan employment security commission appeal board "is reversed and set aside for the reason that the same is contrary to law and the great weight of the evidence."

This appeal from the trial court's holding requires a two-pronged examination of the decision of the employment security commission appeal board. Was that decision contrary to the great weight of evidence, contrary to law, contrary to neither, or contrary to both?

Undisputed evidence furnishes the facts that claimant's work, combined with a congenital condition of his spine, brought about a spinal injury such that he could no longer perform work for appellant. Further, there is no question that the injury was the reason why he left his work and that the reason why he did not return to work was because the company had no lighter work for him to do.

It is interesting to note that the settlement statement specifically recites that, "The undersigned,

Paul Larson, because of physical inability to perform the work required  *  *  *  hereby resigns his employment."

Appellant bases its claim that claimant left work voluntarily largely upon the content of the redemption statement signed by claimant and on testimony at the hearing.

Appellee states that economic pressures caused the claimant to enter into the agreement with little regard for its consequences.

The record furnishes support for the contention that economic pressures were the motivating factor in obtaining the resignation, as witness the following colloquy:

"*Q.* And then subsequently you did sign this resignation of employment and waiver of seniority on May 17th, is that correct?

"*A.* I did sign it, yes.

"*Q.* And what caused you to sign this?

"*A.* Well, it was put to me. I didn't receive any compensation up to this time and I was not working and I was not earning money and I had a few obligations to meet and they said, well ———

"*Q.* Who's they?

"*A.* The insurance man, I forget his name right now, Ollie Devett (phonetic) I think, eh, said that they would settle, they would, well, they would settle at their convenience to their amount they wanted to.

"*Q.* Would settle what?

"*A.* Eh, if I agreed to sign this waiver they would come to a settlement if it was agreeable to me to the effect that if it was agreeable with the referee as he called him I would receive the compensation that I had been entitled to up to that point, up to 36 weeks, I believe."

In section 2 of the Michigan employment security act (PA 1936 [Ex Sess], No 1, as amended [CL 1948 and CLS 1961, § 421.1 *et seq.* (Stat Ann 1960 Rev

§ 17.501 *et seq.*)]), the legislature has expressly stated, "Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden *which so often falls with crushing force upon the unemployed worker and his family to the detriment of the welfare of the people of this State.*" (Emphasis supplied.)  That the question of economic stress was considered by the legislature cannot be gainsaid.

When a claimant under this act makes the following statement, "If I agreed to sign this waiver they would come to a settlement", it seems to us that we have come to the very matter aimed at in subsequent interpretations of this law.  We do not deny that the claimant undoubtedly knew what he was doing when he signed this instrument, but it is another thing to say that he had a tenable alternative.  Signing a settlement agreement under the circumstances in which Paul A. Larson found himself does not equate with leaving work voluntarily.*

Likewise, it cannot be called "constructive" voluntary leaving.  The Supreme Court has consistently rejected "constructive disqualification" and though the circumstances in those cases may have been different, the theory was the same.  In *Copper Range Company* v. *Unemployment Compensation Commission* (1948), 320 Mich 460, it was stated (p 469): "We are not as yet prepared to accept and apply the doctrine of constructive voluntary leaving."  This holding was echoed in *Thomas* v. *Employment Security Commission* (1959), 356 Mich 665, 669, and amplified by the statement, "It is not the proper function of the court to amend the statute to broaden or extend the disqualifications fixed, in plain language, by the legislature.  Whether one in claimant's situa-

---

* See CLS 1956, § 421.29, subd (1)(a) (Stat Ann 1955 Cum Supp § 17.531, subd [1][a]).—REPORTER.

tion ought to be disqualified is a question of policy for the legislature, not a judicial question to be determined by the court."

The issue before us, *i.e.*, whether the claimant voluntarily left his work without good cause attributable to his employer by virtue of executing the settlement statement with a termination of employment therein, appears not to have been ruled upon directly in this State. Such tangential situations as have come before our courts have dealt largely with personal motivations or circumstances rather than those arising from health or injury.

Appellant says, "Undoubtedly, the claimant would have preferred to avoid the necessity of being faced with the decision of a cash settlement versus weekly benefits. Nevertheless, he had a choice to make and he made it. In so doing, he quit his job." *Post hoc, ergo propter hoc.*

Under the facts presented to us, voluntariness under these circumstances comes down to one thing. He may have "voluntarily" *signed* the settlement statement, which included the termination of employment, but it does not necessarily follow that he left work "voluntarily." Even the board's reasons for disqualifying the claimant are cryptic, ignoring all the surrounding circumstances, "It is the opinion of this board that the claimant, by his actions in accepting a workmen's compensation redemption settlement and agreeing to terminate his employment, voluntarily left his employment without good cause attributable to the employer."

One spectre looms throughout this entire transaction: economic straits. The employment security act was intended to protect just such a person as claimant from the subtly coercive effects of economic pressure, and to prevent just such a consequence as we have here.

Claimant was forced to cease working because of his work-connected injury. His signature on the combined resignation and settlement represents the act of a necessitous man faced with only one tenable alternative. This is not the "voluntary" termination of employment contemplated by the statute.

The technique of the carrot on the stick, while permissible in some areas of the law, is not a proper approach to the employment security act.

The conclusion is inescapable that claimant's unemployment is the consequence of his work-related injury. The concept of voluntary termination of employment is not compatible with these particular facts and circumstances.

Judgment of the trial court reversing the appeal board decision is affirmed. Costs to appellee.

WATTS, P. J., and HOLBROOK, J., concurred.