APPLEGATE v PALLADIUM PUBLISHING COMPANY

Docket No. 78-4144. Submitted June 12, 1979, at Grand Rapids.— Decided February 5, 1980. Leave to appeal applied for.

In the spring of 1975, Palladium Publishing Company negotiated a contract with the Twin Cities Typographical Union, Local 762, which provided that the union would be the exclusive bargaining agent of certain employees, increased the amount of pension benefits payable to covered employees under the company funded pension plan, and provided for mandatory retirement of all persons who were 65 years or older. Paul F. Applegate, an employee subject to that collective bargaining agreement, was over 65 years of age and, accordingly, was advised by the union representative that he would have to retire. Applegate retired without protest and thereafter received monthly pension benefits from Palladium, in addition to monthly social security retirement benefits. Applegate thereafter registered with the Michigan Employment Security Commission office as being available for work and sought unemployment compensation benefits. The commission determined that Applegate was entitled to unemployment compensation benefits. On redetermination, it was held that Applegate was not disqualified from benefits on the basis of the statutory voluntary termination of employment provision, however, his benefits were reduced to reflect his receipt of retirement benefits, as mandated by statute. The redetermination was affirmed by a referee, whose decision was, in turn, affirmed by the Michigan Employment Security Appeal Board.

Palladium sought review of the appeal board's decision in circuit court. The Berrien Circuit Court, Chester J. Byrns, J., reversed the appeal board's decision and held that Applegate was ineligible for benefits on the basis that Applegate had voluntarily left work within the meaning of the Michigan

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 76 Am Jur 2d, Unemployment Compensation § 60.

Unemployment compensation: eligibility of employee laid off according to employer's mandatory retirement plan. 50 ALR3d 880.

Eligibility for unemployment compensation of employee who retires voluntarily. 88 ALR3d 274.

Employment Security Act, and, accordingly, he must serve 13 requalifying weeks and must have 13 weeks of benefits deducted from his maximum benefit entitlement. The Employment Security Commission, a part in the proceedings in circuit court, appeals as of right. *Held:*

1. A person who is required to retire from his employment because of a mandatory retirement provision contained in the collective bargaining agreement negotiated by the labor union of which that person is a member is deemed to have voluntarily terminated his employment within the meaning of the Michigan Employment Security Act. The voluntary termination of employment by such an individual renders that person disqualified from unemployment compensation benefits under the provisions of the act.

2. A mandatory retirement provision of the collective bargaining agreement is not an agreement to waive, release or commute benefit rights under the Michigan Employment Security Act and, thus, is not rendered void and invalid by the act.

3. The disqualification from unemployment benefits by persons who retire is limited to those persons who retire as a result of a mandatory retirement provision contained in a collective bargaining agreement negotiated by the labor union of which they are members. The statutory provision which reduces unemployment compensation benefits by reason of receipt of retirement benefits clearly evidences an intent that retired persons under other circumstances are not disqualified from unemployment compensation benefits.

Affirmed.

1. UNEMPLOYMENT COMPENSATION — VOLUNTARY TERMINATION OF EMPLOYMENT — MANDATORY RETIREMENT — COLLECTIVE BARGAINING AGREEMENT — DISQUALIFICATION FROM BENEFITS — STATUTES.

A person who is required to retire from his employment because of a mandatory retirement provision contained in the collective bargaining agreement negotiated by the labor union of which said person is a member is deemed to have voluntarily terminated his employment within the meaning of the Michigan Employment Security Act and, accordingly, is subject to the provision of the act which disqualifies from benefits persons who voluntarily terminate employment (MCL 421.29[1][a], [3], [4]; MSA 17.531[1][a], [3], [4]).

2. UNEMPLOYMENT COMPENSATION — AGREEMENT TO VOLUNTARILY TERMINATE EMPLOYMENT — VALIDITY — STATUTES.

An agreement to voluntarily terminate employment, which

thereby disqualifies a person so terminating employment from unemployment compensation benefits, is not an agreement by an individual to waive, release or commute benefits of rights under the Michigan Employment Security Act such that the agreement is statutorily void and invalid (MCL 421.31; MSA 17.533).

3. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION FROM BENE-
FITS — VOLUNTARY TERMINATION OF EMPLOYMENT — LIMITA-
TION OF DISQUALIFICATION — STATUTES.

Disqualification from receiving unemployment benefits by persons who retire is limited to those persons who are deemed to have voluntarily terminated their employment as a result of a mandatory retirement provision contained in the collective bargaining agreement governing their employment status, the statutory provision which reduces unemployment compensation benefits by reason of retirement benefits clearly evidencing that retired persons under other circumstances may not be disqualified from unemployment compensation benefits (MCL 421.27[f]; MSA 17.529[f]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for Michigan Employment Security Commission.

*Spelman, Tuglia, Meek, Lagoni, Burdick & Sauer,* for defendant.

Amicus curiae: *Kleiner & DeYoung* (by *Michael L. Fayette)* and *John A. Fillion,* General Counsel, and *Jordan Rossen* and *M. Jay Whitman,* Associate General Counsel, for the International Union.

Before: D. F. WALSH, P.J., and M. J. KELLY and E. F. OPPLIGER,* JJ.

D. F. WALSH, P.J. The Michigan Employment Security Commission (hereinafter called the MESC) appeals the order of the Berrien County Circuit Court reversing a decision of the Michigan

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Employment Security Appeal Board. The appeal board's decision affirmed a determination that Paul F. Applegate (hereinafter called the plaintiff), former employee of defendant Palladium Publishing Company, was entitled to unemployment compensation benefits under the Michigan Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.*

Palladium Publishing Company is a union shop. In the spring of 1975 the company and its employees' representative, Twin Cities Typographical Union, Local 762, negotiated a three-year contract commencing June 1, 1975, and ending May 31, 1978. The contract provided that the union was the exclusive bargaining representative of certain employees, including plaintiff. The contract raised the amount of pension benefits payable to covered employees. The pension plan is totally funded by the employer. In addition, the contract contained the following provision for mandatory retirement:

"The union agrees that an employee in the composing room or photoengraving department who reaches the age of 65 shall retire on the first of the month following the day he reached 65. Employees who are 65 or older as of May 31, 1975, must retire within 90 days after May 31, 1975."

Plaintiff was employed by Palladium as a compositor from August 20, 1944, until August 29, 1975. At the time of execution of the 1975 contract, plaintiff was over 65 years old. He was advised by the union representative that he would have to retire within 90 days of the effective date of the contract. Since his August 29, 1975, retirement, plaintiff has received monthly pension benefits from Palladium and monthly social security retirement benefits.

Plaintiff did not protest his mandatory retirement. He registered with the local MESC office as being available for work. On September 10, 1975, he applied for unemployment compensation benefits. A determination was made by the commission on October 10, 1975, awarding benefits to him. On November 3, 1975, a redetermination was issued which held that plaintiff was not disqualified for benefits under MCL 421.29(1)(a); MSA 17.531(1)(a) hereinafter referred to as § 29(1)(a). That subsection provides: "An individual shall be disqualified for benefits in all cases in which he: (a) has left work voluntarily without good cause attributable to the employer or employing unit." It was ruled that plaintiff was entitled to benefits for 26 weeks at $97 per week. The weekly rate was reduced to $75 to reflect plaintiff's receipt of retirement benefits. MCL 421.27(f); MSA 17.529(f). The redetermination was affirmed by a referee on May 14, 1976. Palladium appealed to the Employment Security Appeal Board, which affirmed the referee's decision.

Palladium appealed the appeal board's decision. The circuit court reversed, finding that plaintiff was ineligible for benefits under § 29(1)(a). The court found that plaintiff had left work voluntarily in accordance with the contract negotiated on his behalf by the union. Under the circuit court's ruling, plaintiff must serve 13 requalifying weeks and 13 weeks of benefits will be deducted from his maximum benefit entitlement. MCL 421.29(3), (4); MSA 17.531(3), (4).

The issue presented is one of first impression in Michigan. Does a union member employee who is compelled to retire under the terms of a collective bargaining agreement reached between his union and his employer leave his job "voluntarily with-

out good cause attributable to the employer" so
that he is disqualified for unemployment compen-
sation benefits under § 29(1)(a) of the employment
security act?

There is currently a split of authority concern-
ing proper resolution of this issue. See Anno:
*Unemployment Compensation: Eligibility of Em-
ployee Laid Off According to Employer's Manda-
tory Retirement Plan,* 50 ALR3d 880, § 3(a), p 886,
§ 4(a), p 895; 1 B CCH Unemployment Ins Rep, ¶¶
1975.340, 1975.3404, p 4493-29; 76 Am Jur 2d,
Unemployment Compensation, § 60, p 959.

The leading case following the view that persons
retired pursuant to mandatory provisions in collec-
tive bargaining agreements are eligible for unem-
ployment compensation benefits is *Campbell Soup
Co v Board of Review,* 13 NJ 431; 100 A2d 287
(1953). The New Jersey Supreme Court held in
that case that the claimants had left work involun-
tarily. The court found unimportant the fact that
the claimants, through their agent, the union, had
voluntarily subscribed to the collective bargaining
agreement. The court noted that each of the claim-
ants had resisted termination and had left against
his will. Using a subjective approach the court
found the test to be whether the individual em-
ployee wanted to continue working.

The contrary and, we think, better reasoned
approach was taken by the Supreme Court of
Minnesota in *Bergseth v Zinsmaster Baking Co,*
252 Minn 63; 89 NW2d 172 (1958). There the court
found that, by being a member of the union, the
employees had ratified or joined in the decisions of
the union and were bound by those decisions.
"Any other result would destroy the principles of
collective bargaining and render union-manage-
ment contracts meaningless." 252 Minn at 70; 89
NW2d at 177.

We find unacceptable and unworkable the "subjective" approach of the *Campbell* court. See 50 ALR3d at 883. Instead, we adopt the analysis of the *Bergseth* case and affirm the circuit court's ruling that plaintiff is disqualified for unemployment benefits due to his "voluntary" termination of employment. Action taken by employees under a contract negotiated for them by their authorized agent must be considered their voluntary acts. In effect, plaintiff agreed to terminate his employment voluntarily pursuant to the collective bargaining agreement. As observed by the Ohio court in *Marcum v Ohio Match Co,* 4 Ohio App 2d 95, 98; 212 NE2d 425, 427 (1965), plaintiff, "through his agent, entered into this contract. He chose to accept its benefits including the pension. He must also abide by the duties called for by such agreement."[1]

The MESC argues that, if the collective bargaining agreement is considered a binding agreement by plaintiff to voluntarily terminate his employment with Palladium at retirement age, the agreement is void as contrary to MCL 421.31; MSA 17.533, which provides in pertinent part:

"No agreement by an individual to wave [sic], release, or commute his rights to benefits or any other rights under this act from an employer shall be valid."

---

[1] Our holding is not in conflict with those cases in which the Michigan Supreme Court has rejected, for unemployment benefits purposes, the doctrine of "constructive voluntary leaving". Those cases did not involve persons leaving employment pursuant to the provisions of union-employer contracts. Rather, they dealt with employees who took risks which they need not have assumed would result in job loss. *Thomas v Employment Security Comm,* 356 Mich 665; 97 NW2d 784 (1959) [employee arrested for driving without a license while en route to his job], *Wickey v Employment Security Comm,* 369 Mich 487; 120 NW2d 181 (1963) [employee seaman missed his ship], *Jenkins v Employment Security Comm,* 364 Mich 379; 110 NW2d 899 (1961) [disciplinary discharge].

Several courts have rejected similar arguments. In *Bergseth, supra,* for example, the court found that the agreement did not waive benefits to which the employees would otherwise have been entitled. "Rather it is an agreement for the voluntary termination of employment and is, therefore, not prohibited." 252 Minn at 72; 89 NW2d at 178. See also *Richardson v Maine Employment Security Comm,* 229 A2d 326, 331 (Me, 1967): "For a right to be waived, released or commuted the right must first exist, though inchoately. There is no right in the mandatory retiree under the facts before us to unemployment benefits upon which this statute can operate."

Under MCL 421.27(f) unemployment compensation benefits must be reduced by certain retirement benefits. In light of this provision we must stress the limited scope of our holding. It is not our opinion that persons who retire are disqualified from receiving unemployment compensation benefits. On the contrary, our decision is limited to those persons whose contractual mandatory retirement is the cause of their unemployed status. As noted by the Ohio court:

"The reference to the reduction of benefits in the event retirement pay is received does not create a right to receive such benefits. However, if a new job is obtained, and a sufficient length of service is performed, then benefits may be paid in the event of a subsequent lay-off." *Marcum v Ohio Match Co, supra,* 4 Ohio App 2d at 98; 212 NE2d at 427.

Because we find that plaintiff voluntarily left his work without good cause attributable to his employer,[2] we affirm reversal of the decision of the

[2] Our holding finds support in the Supreme Court's discussion in *I M Dach Underwear Co v Employment Security Comm,* 347 Mich

Employment Security Appeal Board.[3]
   No costs, a public question.

---

465; 80 NW2d 193 (1956). In that case the issue was unemployment benefit eligibility for employees unpaid during a plant shutdown for vacations. The collective bargaining agreement between the employees' union and the employer required that vacations be taken during an annual shutdown. In affirming denial of benefits, the Court found that the employees were not involuntarily unemployed.

The *Dach* result was expressly overruled in *Employment Security Comm v Vulcan Forging Co*, 375 Mich 374; 134 NW2d 749 (1965). In that case the Court relied on the statutory provision for payment of unemployment compensation benefits to certain employees during vacation periods. MCL 421.48; MSA 17.552. The *Vulcan* majority did not express disapproval of the *Dach* majority's conclusion that the employees had left work voluntarily because their bargaining representative had voluntarily entered into the contract requiring unpaid vacations. The *Vulcan* Court, however, stated that, even if the employees had left work voluntarily, their unemployment had resulted from a cause attributable to the employer—*i.e.*, the employer's voluntary execution of the contract requiring the vacations. 375 Mich 380-381.

We decline to follow the *Vulcan* dicta concerning the statutory requirement of "without good cause attributable to the employer". The Court's discussion was unnecessary to its disposition of the issue there involved. In addition, it is our view that an employee who retires pursuant to a mandatory provision in a collective bargaining agreement is not unemployed by virtue of cause attributable to the employer in the statutory sense. The voluntary termination of employment is "caused" by the collective bargaining agreement, which cannot fairly be considered "attributable to the employer". Once a contract has been executed its requirements must be viewed as acceptable to all parties to the contract. All parties must be held responsible for the contractual provisions. Those provisions are not "attributable" to either party. In our view, the "without good cause attributable to the employer" requirement is inapplicable to the instant fact situation.

[3] Plaintiff cites *Larson v Employment Security Comm*, 2 Mich App 540; 140 NW2d 777 (1966), as authority for the proposition that one who, through his union bargaining representative, enters into a contract to retire at a certain time does not leave work "voluntarily" as that term is used in MCL 421.29(1)(a); MSA 17.531(1)(a). We believe the *Larson* decision should be limited to its own facts. In that case this Court found that Larson had executed the redemption agreement which required his resignation from employment because of the "coercive effects of economic pressure" and that "[t]he concept of voluntary termination of employment [was] not compatible with [the] *particular facts and circumstances*" of that case. See *Larson, supra,* 546-547. (Emphasis supplied.) To any extent, however, that the holding in *Larson* is incompatible with our disposition of this case, we decline to follow it.