WARBLOW v THE KROGER COMPANY

Docket No. 90455. Submitted October 16, 1986, at Detroit. Decided November 17, 1986.

Jeffrey J. Warblow terminated his employment with The Kroger Company when the union of which he was a member negotiated a new contract that included wage concessions. Warblow sought unemployment compensation benefits. The Michigan Employment Security Commission administratively denied those benefits, holding that Warblow was disqualified from receiving benefits by reason of the fact that he voluntarily quit without good cause attributable to his employer. The MESC referee, the MESC board of review and the Jackson Circuit Court, Russel E. Noble, J., in their successive reviews of Warblow's appeals upheld the MESC determination and rejected Warblow's contention that the wage reduction provisions of the new contract caused his termination to be for good cause attributable to the employer. Plaintiff appealed.

The Court of Appeals held:

While a voluntary termination of employment because of a unilaterally imposed wage reduction by an employer may be considered to be termination of employment for good cause attributable to the employer, voluntary termination of employment because of a wage reduction resulting from a collective bargaining agreement between an employee's union and his employer will not be considered to be termination for good cause attributable to the employer and thus the employee can not avoid disqualification from unemployment compensation benefits. An employee must accept the burdens of union membership as well as its benefits.

Affirmed.

UNEMPLOYMENT COMPENSATION — VOLUNTARY TERMINATION OF EMPLOYMENT — WAGE REDUCTIONS — COLLECTIVE BARGAINING AGREEMENT — DISQUALIFICATION FROM BENEFITS.

A person who terminates his employment because his union has

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 59, 62, 65.

Unemployment compensation: eligibility as affected by claimant's refusal to work at reduced compensation. 95 ALR3d 449.

negotiated a new contract with the employer which includes various concessions including a reduction in wages is deemed to have voluntarily quit his employment without good cause attributable to his employer and is thus disqualified from receiving unemployment compensation benefits (MCL 421.29[1][a]; MSA 17.531[1][a]).

*Richard W. McHugh,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patricia L. Sherrod,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: R. S. GRIBBS, P.J., and HOOD and R. R. FERGUSON,* JJ.

PER CURIAM. Plaintiff appeals as of right from a circuit court opinion and order which affirmed a decision of the Michigan Employment Security Commission's Board of Review denying plaintiff's application for unemployment benefits following termination of his employment as a night stock clerk with The Kroger Company. Plaintiff contends that the lower court erred as a matter of law in affirming his disqualification from receiving unemployment benefits after he quit his job because his labor union agreed to wage concessions. We affirm the orders of the circuit court and the MESC board of review.

Plaintiff worked at Kroger for approximately nine years until April, 1984, when he took a medical leave of absence. Plaintiff was a member of the United Food and Commercial Workers Union, Local 951. While he was on medical leave, the union negotiated a new contract with the employer, agreeing to various concessions including a reduction in wages. On September 10, 1984, when

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff was certified as being able to return to work, he notified his employer that, because of the contract concessions, he was quitting. On his application for unemployment benefits, he listed both the wage concessions and the fact that he was "tired of night shift work" as reasons for leaving the job.

MESC administratively held that plaintiff was disqualified from receiving benefits because he left his job voluntarily without good cause attributable to the employer. A referee affirmed the decision holding that, as a member of the union, plaintiff was bound by the labor agreement reached by a majority of its members. The board of review and the circuit court affirmed.

The circuit court's standard of review is set forth in MCL 421.38(1); MSA 17.540(1):

> The circuit court . . . may review questions of fact and law on the record made before the referee and the board of review involved in a final order or decision of the board, and may make further orders in respect thereto as justice may require, but the court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record.

It is the function of this Court to ascertain whether there exists a rational basis to support the conclusion reached by the board. *Salenius v Employment Security Comm*, 33 Mich App 228; 189 NW2d 764 (1971).

MCL 421.29(1)(a); MSA 17.531(1)(a) provides in relevant part:

> An individual shall be disqualified for benefits in the following cases in which the individual:

(a) Left work voluntarily without good cause attributable to the employer or employing unit.

Plaintiff in this case contends that where the employer imposed a reduction in his wages the employee should not be disqualified under this provision. Plaintiff correctly notes that where the employer acts *unilaterally* in imposing a substantial pay cut on an employee the employee may be found to have left work with "good cause attributable to the employer" and thus may be eligible for benefits. See Anno: *Unemployment compensation: eligibility as affected by claimant's refusal to work at reduced compensation,* 95 ALR3d 449. However, the issue in the instant case is more difficult. Since the employer and the union agreed to wage reductions, the question presented is whether the plaintiff is bound by the action taken by his union.

The MESC referee in this case relied upon *Applegate v Palladium Publishing Co,* 95 Mich App 299; 290 NW2d 128 (1980), lv den 409 Mich 904 (1980), in support of his decision to disqualify plaintiff under § 29(1)(a) of the act. In *Applegate,* this Court held that, because a mandatory retirement provision was part of the claimant's union contract, the retiring claimant had left work voluntarily even though he personally wanted to continue working and was forced out by the provision. This Court considered the relationship between the claimant and his union to be one of agency and, because the law gives the agent (the union) the right to act for its principal (the claimant), treated the retirement provision of the union contract as the "voluntary act" of the claimant.[1] Relying upon *Applegate,* the referee in this case added that the majority vote of

---

[1] The propriety of *Applegate* is being considered by the Michigan Supreme Court in a similar case, *Dolce v Ford Motor Co,* unpublished per curiam opinion of the Court of Appeals, decided September 19, 1984 (Docket No. 68415), lv gtd 424 Mich 856 (1985). In that case the

the union's members to accept the contract with its wage concessions bound the minority of disagreeing members of the union and precluded the instant plaintiff's claim for benefits.

*Applegate* is instructive but distinguishable from the facts of the instant case. In *Applegate,* the retiring claimant had no choice and was forced to retire. On the other hand, it is clear that in the case at bar the provisions of the labor contract between plaintiff's union and the employer did not *force* plaintiff to quit his job. While the issue is one of first impression in Michigan, other jurisdictions have held that a claimant is disqualified from receiving benefits where he chooses to terminate his employment because he is displeased with a contract negotiated on his behalf by his union.

In *Stawikowski v Collins Electric Const Co,* 289 NW2d 390 (Minn, 1979), electricians participating in an apprenticeship program signed a formal agreement which bound them to the terms of a collective bargaining agreement entered into between the employer and the union. Under the agreement, they became journeymen after the training was completed, however, since their employment as apprentices terminated, they became subject to the union contract's seniority system and could not immediately find employment as journeymen electricians. When they applied for unemployment benefits their claims were denied on the grounds that they "voluntarily and without good cause attributable to the employer discontinued" their employment. The Minnesota Supreme Court held that the claimants knowingly accepted employment from the employer subject to the seniority provisions of the collective bargaining

MESC takes the position that *Applegate* is erroneously decided insofar as it upholds the validity of contracts which force employees to retire. This panel offers no opinion on that issue.

agreement. Since they agreed to the seniority system through their bargaining agent, their unemployment was voluntary. Because fault could not be attributed to the employer and because granting benefits would unfairly burden the employer by increasing its unemployment tax rate, the claimants were disqualified from receiving benefits.

Similarly, in *Beaman v Aynes*, 96 Ariz 145; 393 P2d 152 (1964), where the plaintiff quit his job in a wage dispute with his employer, the Arizona Supreme Court found that the claimant had agreed to settle disputes in the manner prescribed by his union contract. When he was unable to resolve the dispute with the employer, he was bound to follow the grievance procedures. The Court held that the claimant was disqualified to receive benefits because he had not become unemployed without fault of his own.

In the instant case plaintiff was bound, as a member of the union, by the terms of the collective bargaining agreement. He knew that the union was authorized to make decisions which were binding on all of its members. Plaintiff was constrained to accept the burdens as well as the benefits of such membership.

Plaintiff also submits that he is not disqualified because he had "good cause" to quit his job. This Court recently defined "good cause" under § 29(1)(a) to exist "where an employer's actions would cause a reasonable, average, and otherwise qualified worker to give up his or her employment." *Carswell v Share House, Inc*, 151 Mich App 392; 396-397; 390 NW2d 252 (1986). Good cause attributable to the employer is not established where an employee quits due to a majority of his union agreeing to accept wage concessions, presumably in return for retaining jobs for the mem-

bers. Cf., *Stawikowski, supra.* While plaintiff was entitled to quit his job if he did not like the terms of the collective bargaining agreement, he has failed to establish reasons why the employer should bear the burden of his decision to quit.

Moreover, it is salient to note that, in addition to the reduction in wages, plaintiff also stated he was quitting because he was tired of working at night. This too indicates that plaintiff quit for personal reasons and not for good cause attributable to the employer. The decision of the circuit court and the MESC denying the plaintiff's application for benefits is not contrary to law.

Affirmed.