McARTHUR v BORMAN'S, INC

NILSSON v BORMAN'S, INC

Docket Nos. 130656, 132072. Submitted December 2, 1992, at Detroit. Decided July 19, 1993, at 9:50 A.M.

Robin L. McArthur sought unemployment benefits from her former employer, Borman's, Inc. The Employment Security Commission denied her benefits on the basis that she had terminated her employment voluntarily as part of a buyout plan. The Wayne Circuit Court, John A. Murphy, J., reversed that determination. Borman's appealed.

Teresa D. Nilsson sought unemployment benefits from Borman's and was denied benefits by the MESC on the same basis. The Macomb Circuit Court, John B. Bruff, J., affirmed that determination. Nilsson appealed. The appeals were consolidated.

The Court of Appeals *held:*

The findings of the MESC that the claimants voluntarily left their employment without good cause attributable to the employer were supported by the evidence and not contrary to law. The acceptance of each claimant of a lump-sum payment in exchange for her resignation was a voluntary termination, because it resulted from the claimant's decision to accept termination with a lump-sum payment rather than continue employment that presented the prospect of an uncertain future. Because each claimant was offered the choice of continued employment, the termination cannot be said to be attributable to the employer.

Reversed with respect to McArthur and affirmed with respect to Nilsson.

1. UNEMPLOYMENT COMPENSATION — VOLUNTARY TERMINATION — CASH SETTLEMENTS.

Unemployment benefits are designed not to protect those who receive large cash settlements following voluntary separations,

**REFERENCES**

Am Jur 2d, Unemployment Compensation §§ 104-115.

Eligibility for unemployment compensation of employee who retires voluntarily. 88 ALR3d 274.

but to assist those who become unemployed through no fault of their own.

2. Unemployment Compensation — Voluntary Termination — Good Cause Attributable to Employer.

An employee's decision to terminate employment voluntarily in exchange for a cash settlement is not a termination for good cause attributable to the employer where the employee had the option of continued employment (MCL 421.29[1][a]; MSA 17.531[1][a]).

*Richard W. McHugh,* Associate General Counsel, International Union, UAW, for the claimants.

*Barris, Sott, Denn & Driker* (by *Elaine Fieldman* and *Susan L. Mashour*), for Borman's, Inc.

Before: Corrigan, P.J., and Weaver and Connor, JJ.

Corrigan, P.J. In these consolidated actions for unemployment benefits under the Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.,* claimant Nilsson appeals the decision of the Employment Security Commission, affirmed by the Macomb Circuit Court, denying her claim for unemployment benefits. Defendant Borman's appeals a Wayne Circuit Court order reversing the MESC's denial of unemployment benefits to claimant McArthur. We affirm the order of the Macomb Circuit Court and reverse the order of the Wayne Circuit Court. The agency properly concluded in both cases that claimants voluntarily left their employment without good cause attributable to the employer. MCL 421.29(1)(a); MSA 17.531(1)(a).[1]

Claimants were employed as full-time cashiers at Borman's Farmer Jack's supermarkets when

[1] Of the 806 Borman's employees who accepted the terms of a buyout terminating their employment, fifty-five subsequently applied for and were denied unemployment benefits. One employee in exceptional circumstances was granted benefits at the agency level.

the company and claimants' union negotiated a new contract in August 1987. Under the newly executed agreement, Borman's had an option to reduce a portion of the full-time work force to part-time status two years later, in August 1989. The work plan would permit fifty-percent of the cashiers to remain as full-time employees. Eligibility for full-time status was to be determined by seniority. Neither McArthur nor Nilsson had sufficient seniority to guarantee full-time status in August 1989.

The parties did not submit a copy of the collective bargaining agreement defining the buyout offer and work-force changes into the record. However, each claimant's signed buyout agreement was introduced into evidence. It is undisputed that the effective date of the reduction-in-force plan was in August 1989, nearly two years after the buyout agreements were signed.

Under the buyout plan, Borman's offered its cashiers $16,000 to terminate their employment before December 31, 1987. The cashiers could choose either to terminate their employment and receive $16,000 or to continue in their employment subject to the new union contract. Two months after she elected the buyout, McArthur was reduced to part-time status for reasons apparently unrelated to the buyout. Both claimants left defendant's employ on December 19, 1987, and received $16,000 payments.[2]

---

[2] Claimant McArthur testified at her administrative hearing before a referee that in August 1987 Borman's offered to pay her $16,000 if she would quit her full-time job as a cashier and deli-clerk by the end of the year. She testified that she was told by Borman's that if she did not accept this buyout she could continue to work full-time at the same hourly wage until August 1989, when she would be reduced to part-time employment as part of a planned fifty-percent reduction in Borman's full-time work force. She accepted the offer in September 1987, and last worked for Borman's in December 1987.

Teresa Nilsson testified at her referee hearing that Borman's also

Judicial review of proceedings under the Employment Security Act is narrowly circumscribed. MCL 421.38(1); MSA 17.540(1) provides:

> The circuit court . . . may review questions of fact and law . . . but the court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record.

Judicial review of factual findings of administrative tribunals is limited. The reviewing court will not substitute its judgment for that of the fact-finding tribunal. *Saber v Capital Reproductions, Inc,* 28 Mich App 462, 464; 184 NW2d 518 (1970). The MESC Board of Review's decision may be reversed only if the decision is contrary to law or is not supported by competent, material, and substantial evidence. *Becotte v Gwinn Schools,* 192 Mich App 682, 685; 481 NW2d 728 (1992). Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id.* We accord due deference to administrative expertise and do not displace an agency's choice between two reasonably different views. *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974) (applying the competent, material, and substantial evidence standard of MCL 423.23[e]; MSA 17.454[25][e]); *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 184 Mich App 551, 557; 459 NW2d 15 (1990). Where the underlying facts are undisputed, questions presented on appeal are treated as matters of law.

offered to pay her $16,000 to quit her job. She testified that she was told that if she did not accept the buyout, she would lose her benefits and be reduced to twenty-eight hours a week. She testified that there was a chance that she would not be reduced to part-time if other employees with more seniority accepted the buyout.

*Grand Rapids Public Schools v Falkenstern,* 168 Mich App 529, 536; 425 NW2d 128 (1988).

MCL 421.29(1); MSA 17.531(1) provides in part:

> An individual shall be disqualified for benefits in the following cases in which the individual:
>
> (a) Left work *voluntarily* without *good cause attributable to the employer or employing unit.* [Emphasis supplied.]

Two questions invariably arise in cases under § 29(1)(a). The first is whether the claimant left employment voluntarily. If not, the inquiry ends because the disqualification provision of § 29(1)(a) is not applicable. *Clarke v North Detroit General Hosp,* 437 Mich 280, 286, n 8; 470 NW2d 393 (1991). If the claimant's departure is voluntary, the claimant nonetheless may be eligible for benefits if departure was for "good cause attributable to the employer."

A voluntary departure is an intentional act. See *Parks v Employment Security Comm,* 427 Mich 224, 240; 398 NW2d 275 (1986) (opinion of BRICK- LEY, J.). The state has a substantial interest in reserving unemployment benefits for those who became unemployed "due to forces beyond their control." *Id.* at 242. "Voluntary" connotes a choice between alternatives that ordinary persons would find reasonable. *Clarke, supra; Laya v Cebar Construction Co,* 101 Mich App 26, 32; 300 NW2d 439 (1980). Unemployment benefits are not designed to protect those who receive large cash settlements following voluntary separations, but to assist those who become unemployed through no fault of their own. In this context, voluntary means that an employee "left work voluntarily . . . [and] was not discharged." *Copper Range Co v Unemployment Compensation Comm,* 320 Mich 460, 469; 31 NW2d

692 (1948); see also, *Clarke, supra* at 282, 284-285, 287. We accept Justice RILEY's concurring view that the *Clarke* majority has defined voluntary leaving as "he left of his own motion; he was not discharged." *Id.* at 290.

In *Tomei v General Motors Corp,* 194 Mich App 180, 186; 486 NW2d 100 (1992), a plant-closing case, this Court shifted the burden of proof of voluntariness to the employer. In all other cases, the claimant retains the burden of proof. *Tomei* requires an employer in plant-closing cases to demonstrate that "the options it offered to the claimant were not unreasonable, untenable, or illusory," and that the employer offered choices that are "reasonable, viable, and clearly communicated to the employee." *Id.* We think that *Tomei* impermissibly tacked on elements to the statutory test, MCL 421.29(1)(a); MSA 17.531(1)(a), and redefined "voluntary leaving" in the context of plant-closing cases. We also question whether *Tomei* properly shifted the burden of proof, given the Supreme Court's recent interpretation of voluntariness in *Clarke.*

By its own terms, *Tomei,* a plant-closing case, does not purport to control this fact pattern—an ongoing business that negotiates a future reduction of its work force with its employees. Hence, we are not bound to follow *Tomei* pursuant to Administrative Order No. 1990-6.

Applying the *Clarke* test, each claimant here plainly left work voluntarily. The employer provided a substantial monetary incentive and also made quitting more attractive by the threatened reduction to part-time status. Nonetheless, each claimant could have continued to work for the employer, and each chose not to do so.

Claimants contend that their circumstances satisfied the *Tomei* standards. We disagree. Neither

claimant here was out of work. McArthur had the prospect of two remaining years of full-time employment. During those two years, she might earn more than the $16,000 Borman's offered, while being able to look for another full-time job. Nilsson's reduction to twenty-eight hours a week would have resulted in a long-term earnings decline to $15,000 per year. Nevertheless, this amount still far exceeded the average pay for full-time employment that was reasonably attainable by someone with her training and background. We cannot say in either case that the MESC's decision was not supported by competent, material, and substantial evidence or was contrary to law.

*Larson v Employment Security Comm,* 2 Mich App 540; 140 NW2d 777 (1966), is distinguishable. In that case, this Court found involuntary an employee's resignation from employment and settlement of a workers' compensation claim. He had been forced to stop working because of a disabling injury and was without income. Claimants here did not face the imminent economic compulsion described in *Larson.* They both had a substantial remaining period of full-time employment and a prospect of continued employment, albeit possibly part-time. Unlike the claimant in *Larson,* their choice was not between resignation and no income at all. Further, *Larson* was limited to its own facts in *Applegate v Palladium Publishing Co,* 95 Mich App 299, 307, n 3; 290 NW2d 128 (1980). We also find *Copper Range Co, supra,* inapplicable. Those claimants worked "until such time as there was no longer any work available," *id.* at 471, because their employer had shut down the mine.

We disagree with defendant that *Warblow v Kroger Co,* 156 Mich App 316; 401 NW2d 361 (1986), controls. The plaintiff's union in *Warblow* agreed to a wage reduction from Kroger's while

the plaintiff was on leave from his job. The plaintiff resigned rather than return to work and was then denied unemployment benefits. This Court affirmed because the "plaintiff was bound, as a member of the union, by the terms of the collective bargaining agreement." *Id.* at 321. Claimants' situations are not directly analogous to *Warblow.* They were bound by the union's agreement to select one of the two alternatives. The choices they made, however, were individual and were still voluntary decisions. See *Cooper v University of Michigan,* 100 Mich App 99, 103; 298 NW2d 677 (1980), which emphasizes that the focus of the inquiry is on the claimant's reasons for terminating employment.

Having found claimants' decisions voluntary, we consider whether those decision were for good cause "attributable to the employer." Claimants assert that there was such "good cause." We disagree. Good cause exists "where an employer's actions would cause a reasonable, average, and otherwise qualified worker to give up his or her employment." *Johnides v St Lawrence Hosp,* 184 Mich App 172, 175; 457 NW2d 123 (1990), citing *Warblow, supra* at 321. See also *Carswell v Share House, Inc,* 151 Mich App 392, 396-397; 390 NW2d 252 (1986). A good personal reason does not equate with good cause under the statute. *Leeseberg v Smith-Jamieson, Inc,* 149 Mich App 463, 466; 386 NW2d 218 (1986); see also *Allied Building Service Co v MESC,* 93 Mich App 500, 507; 286 NW2d 895 (1979). Neither claimant here was told she would be laid off if she rejected the buyout. Cf. *Reserve Mining Co v Anderson,* 377 NW2d 494 (Minn App, 1985).

The findings of the MESC and the Board of Review were not contrary to law. They were supported by the evidence. The claimants' decisions

were made for personal reasons. Each claimant apparently believed that a lump-sum payment of $16,000 and a search for a new job was preferable to continued employment and a reduction to part-time status in August 1989. The MESC's determinations were supported by competent, material, and substantial evidence.

The order of the Macomb Circuit Court affirming the board's denial of benefits to Nilsson is affirmed. The order of the Wayne Circuit Court reversing the board's denial of benefits to McArthur is reversed, and the board's decision is reinstated.