# STATE OF MICHIGAN

# COURT OF APPEALS

---

CATHY A. MARTIN,

        Claimant-Appellant ,

v

E. C. BROOKS CORRECTIONAL FACILITY,
and DEPARTMENT OF LICENSING &
REGULATORY AFFAIRS/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellees.

UNPUBLISHED
December 23, 2014

No. 316393
Kent Circuit Court
LC No. 2012-009837-AE

---

Before:  M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Claimant, Cathy A. Martin, appeals by delayed leave granted the circuit court's order affirming a decision by the Michigan Compensation Appellate Commission (MCAC), which denied her unemployment benefits.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Claimant worked full-time at the E. C. Brooks Correctional Facility ("E. C. Brooks") as a corrections officer from approximately 2008 until March 2011.  Because of uncertainty—discussed in detail below—regarding her job status, claimant began searching for new employment in February 2011, and eventually found a position as a corrections officer in Georgia.  In March 2011, claimant resigned from her position at E. C. Brooks.  For reasons that are unclear from the record, claimant's employment opportunity in Georgia did not come to fruition.  Thereafter, she applied for unemployment benefits in Michigan.

In May 2011, the Unemployment Insurance Agency determined that claimant was disqualified from receiving unemployment benefits pursuant to MCL 421.29(1)(a) because she voluntarily left her employment without good cause attributable to her employer.  Claimant appealed that determination.  The matter proceeded to a hearing before a hearing referee in June 2011.  At the hearing, claimant testified that in February 2010, she heard rumors from her supervisors that another correctional facility in Muskegon might close, and that this closure could have an effect on her facility, but explained she was told not to worry about it.  In February 2011, claimant's supervisors informed her that there was going to be a layoff and that another

-1-

correctional facility in Muskegon would close by June 1, 2011. Claimant believed that the situation in February 2011 was different than the situation in February 2010 because her supervisors told her that she should worry about the February 2011 situation, explaining, "we kept hearing from our lieutenants and stuff that we were going to get laid off . . . ." Claimant understood that because another facility in the area was closing, senior employees from that facility would replace less senior employees, including herself, at E. C. Brooks. She explained that her superiors told her that, because of her lack of seniority, if and/or when the other facility closed, "you will get bumped[.]" According to claimant, her union was going to "see who was going to get bumped out, who's going to get transferred, what they can do, and who's going to take the layoff." Claimant was stressed because she "didn't know if [she was] going to be bumped off, transferred, or laid off," so she began looking for other work. She did not consider transfers, because she was told by her superiors that there was a "freeze" on transfers, pending the closure of the other facility. She also did not consider voicing her concerns with the human resources department, explaining that speaking with the human resources department would be disrespectful and "going over the[] head[s]" of her superiors. Claimant testified that it was "normal" to receive such information from her superiors, rather than from human resources. She testified that she trusted her superiors, but admitted, "I didn't know really what was going on. It confused me."

During her testimony, claimant spoke of a layoff, transfers, and being "bumped" from employment by more senior employees from another facility. When asked if being "bumped" was the same as being laid off, claimant responded, "I have no idea, ma'am. I really don't."

Rebecca Wright, the human resources officer for E.C. Brooks and other Muskegon area facilities, testified that a Muskegon correctional facility—not the one at which claimant worked—closed in June 2011. Wright testified that supervisors do not have authority to give official notice of facility closings. Official notice only came from human resources, which would notify employees in a letter regarding whether they were being laid off or "bumped." According to Wright, a "bump" is where a more senior employee at one facility "bumps" a less senior employee at a different facility out of his job and the more senior employee takes the less senior employee's place at that location. Then, a bumped employee has two weeks to decide whether to accept an offer to transfer to a different facility. Wright said that there was room throughout the state for everyone from E.C. Brooks, including claimant, to transfer to a different location after being bumped out of E.C. Brooks.

Wright testified that if claimant had approached her before she resigned, Wright could have told her that there were enough transfer vacancies available so that no one at E. C. Brooks would be laid off. According to Wright, ever since 2009, E.C. Brooks' internal newsletter warned employees of a possible closure, "but whether or not it would truly happen, we were never really sure until the day they came down with notices." On May 25, 2011, after claimant resigned, the human resources department provided each E.C. Brooks employee with written notice of how upcoming transfers would work, and that notice was the first official notice that employees would be transferred.

On June 30, 2011, the hearing referee found that, because of the layoff rumors, claimant established good cause for leaving work that was attributable to her employer. The hearing referee so found because it determined that leaving in order to avoid a layoff amounted to

leaving for good cause attributable to the employer. The hearing referee concluded that claimant acted as a reasonable person would have under the circumstances in response to the rumors and statements by her supervisors.

E. C. Brooks appealed the hearing referee's decision to the MCAC, and on May 29, 2012, the MCAC reversed the hearing referee's decision. The MCAC concluded that it was undisputed that claimant left E. C. Brooks voluntarily; thus, it found that the dispositive issue was whether claimant left for good cause attributable to her employer. Noting Wright's testimony that a bump was not the same as a layoff, the MCAC found that claimant did not leave her employer in anticipation of a layoff; rather, she left in anticipation of a bump, which was essentially a transfer. The MCAC concluded that claimant's decision to leave was premature and not for good cause attributable to her employer. It found that claimant acted on "rumors" from her superiors regarding facility closures, and that such action did not amount to good cause attributable to her employer.

Thereafter, claimant appealed the MCAC's decision to the circuit court. After hearing oral argument, the circuit court affirmed the MCAC's decision. The circuit court found significant claimant's lack of understanding as to whether being bumped was the same as being laid off. It also found that the information claimant received from her supervisors regarding the closure and bumps or layoffs was uncertain. Thus, it found that the record supported the MCAC's finding that claimant resigned in response to "rumors." Further, the circuit court found that the MCAC's decision was not contrary to law, as it found that the MCAC correctly applied the reasonable person and "good cause" standards to claimant's case.

## II. DISCUSSION

"When reviewing a circuit court's review of an agency's decision, we must determine whether the circuit court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial-evidence test to the agency's factual findings." *Logan v Manpower of Lansing, Inc*, 304 Mich App 550, 554; 847 NW2d 679 (2014). "This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. . . . [A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id.* at 555 (citation and quotation omitted).

Regarding the circuit court's review of an agency's decision:

A circuit court's review of an administrative agency's decision is limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law. [*Dignan v Michigan Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002).]

Substantial evidence "is evidence that a reasonable person would accept as sufficient to support a conclusion." *Logan*, 304 Mich App at 557 (citation and quotation omitted). "While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Id.* (citation

and quotation omitted). In addition, "it is not a reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of witnesses." *Vanzandt v State Employees Retirement Sys*, 266 Mich App 579, 593; 701 NW2d 214 (2005). Finally, a reviewing court "may not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 341; 810 NW2d 621 (2011).

Here, the MCAC found that claimant left work because of rumors about impending changes, and therefore, claimant was disqualified from receiving unemployment benefits because she voluntarily left work without good cause attributable to the employer. Under MCL 421.29(1)(a), an individual is disqualified from receiving unemployment benefits if he or she "[l]eft work voluntarily without good cause attributable to the employer or employing unit." Claimant does not dispute that she voluntarily left work. However, she contends that her decision to leave was for good cause attributable to her employer. " '[G]ood cause' compelling an employee to terminate his employment should be found where an employer's actions would cause a reasonable, average, and otherwise qualified worker to give up his or her employment." *Carswell v Share House, Inc*, 151 Mich App 392, 396-397; 390 NW2d 252 (1986). The "claimant has the burden of proving that her voluntary leaving was justified." *Id.* at 397.

In *Carswell*, we stated: "[w]e decline to hold, as a matter of law, that a notice of termination does or does not constitute good cause attributable to the employer. The notice of termination and events precipitating the termination can constitute 'good cause'. Each case must be evaluated on the facts presented." *Id.* at 397. Thus, under the reasoning of *Carswell*, rumors of a facility closing that could potentially cause layoffs or transfers do not, as a matter of law, constitute good cause attributable to E. C. Brooks. *Id.*

In evaluating good cause attributable to the employer in this case, we also find instructive our decision in *McArthur v Borman's Inc*, 200 Mich App 686; 505 NW2d 32 (1993). In that case, the employer, a grocery store, negotiated a new union contract, which it had an option to reduce a portion of its full-time workforce to part-time status in two years. *Id.* at 688. Half of the cashiers at the store would remain full-time, and eligibility for full-time employment was determined by seniority. *Id.* The claimants in that case, who were cashiers, lacked sufficient seniority to guarantee full-time status, so they opted to take a buyout and voluntarily left their employment. *Id.* We found that the claimants were unable to establish good cause attributable to the employer under the circumstances, explaining, "[n]either claimant here was told she would be laid off if she rejected the buyout." *Id.* at 693.

Here, as noted, the MCAC and trial court found that claimant failed to establish good cause for leaving her employment because she left in response to rumors. Claimant first challenges the MCAC's finding that she resigned in response to rumors; she argues that such a finding was not supported by competent, material, and substantial evidence. She contends that she resigned in response to statements from her superiors that there was going to be a layoff. We disagree. In this case, the evidence showed that claimant's supervisors told her that there was going to be a layoff, but claimant acknowledged that her union was going to "see who was going to get bumped out, who's going to get transferred, what they can do, and who's going to take the layoff." Claimant stated that she did not know if she was going to be bumped out, transferred, or laid off, so she began looking for other work. She was later informed that, "you will get

bumped" when the other facility closed, but she did not understand what being bumped meant and failed to seek information regarding what being bumped meant. Claimant even admitted, "I didn't really know what was going on." Wright testified that being bumped only meant that an employee would be transferred to another facility and that it did not mean the same thing as a layoff. Based on this evidence, the circuit court did not misapprehend or grossly misapply the substantial evidence test to the agency's factual findings. Claimant's statements showed her confusion and lack of understanding pertaining to the situation, and she failed to seek clarification, which Wright testified was readily available, in order to understand what being bumped meant. Her statements further acknowledged that she was uncertain as to what was going to happen to her, and she even stated that it was possible for E. C. Brooks to transfer her in lieu of firing her. This lack of certainty shows that the MCAC's finding—that claimant left because of rumors—was supported by competent, material, and substantial evidence. See *Dignan*, 253 Mich App at 576.

In arguing to the contrary, claimant focuses solely on her testimony wherein she stated that she was informed by her supervisors that she was going to be laid off. She contends that such testimony negates any finding that she resigned from her employment because of rumors. We do not agree. As noted, while claimant heard from a supervisor that she was going to be laid off, claimant said she was later told by her superiors that she was going to be bumped. Moreover, the isolated statement regarding layoffs was in conflict with the rest of the evidence that showed that claimant was unsure of whether she was going to be laid off or bumped. Even though the isolated portion of the record cited by claimant may have supported claimant's argument, we "may not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *Edw C Levy Co*, 293 Mich App at 341.

Next, claimant argues that the circuit court misapplied the correct legal principles, contending that it erred in applying the reasonable person test from *Carswell*, 151 Mich App at 396-397, when it found that her decision to voluntarily leave her employment in response to the above-noted circumstances was without good cause attributable to the employer. We do not agree with claimant. The circuit court properly noted that, pursuant to MCL 421.29(1)(a), one who voluntarily leaves work without good cause attributable to his or her employer is disqualified from receiving unemployment benefits. Moreover, the circuit court properly noted that a good cause analysis involves a reasonable person analysis taking into account the facts of the case. *Id.* And, under the circumstances, i.e., leaving because of rumors and uncertainty, claimant did not leave for good cause attributable to the employer. See *McArthur*, 200 Mich App at 693; *Carswell*, 151 Mich App at 397. Indeed, this was not a case where claimant left work in the face of certain layoffs. Rather, there was uncertainty and rumors as to whether claimant would be laid off or merely bumped, and claimant herself admitted to being confused with regard to what was going to happen. Further, claimant did not attempt to clarify her status, nor did she attempt to determine what being bumped meant. There is evidence on the record that, had she done so, she would have been informed that she was not going to be laid off. Claimant did not satisfy her burden of demonstrating that a reasonable, average, and otherwise qualified worker would have left under the same circumstances, i.e., she did not satisfy her burden of showing that her leaving was justified. *Carswell*, 151 Mich App at 396-397. The

circuit court applied the correct legal principles to the MCAC's findings, which were not contrary to law. See *Logan*, 304 Mich App at 554; *Dignan*, 253 Mich App at 576.[1]

Affirmed.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

[1] In reaching this conclusion, we find unconvincing claimant's citation to unpublished decisions, *Muns v Glassman Oldsmobile*, unpublished opinion per curiam of the Court of Appeals, issued December 12, 1986 (Docket No. 84721), and *Farnsworth v Michigan Masonic Home*, unpublished opinion per curiam of the Court of Appeals, issued January 17, 1992 (Docket No. 130244), because we find the facts of both decisions are distinguishable. Moreover, the decisions are not binding on this Court. *Paris Meadows v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). Further, we find unconvincing claimant's citation to *Tomei v Gen Motors Corp*, 194 Mich App 180; 486 NW2d 100 (1992). In that case, the issue we decided was whether the employee's decision to leave was *voluntary*—an issue that is not disputed in the instant case. *Id.* at 187-188. We did not decide whether the employee left for good cause attributable to the employer.