SCHULTZ v OAKLAND COUNTY

SCHULTZ v NICHOLS

Docket Nos. 113030, 113057. Submitted October 8, 1990, at Detroit. Decided January 22, 1991, at 9:20 A.M.

Arthur D. Schultz, Jr., an Oakland County deputy sheriff, submitted a letter of resignation to the sheriff's department. Two days later, before the scheduled end of a medical leave, he attempted to withdraw his resignation, but was told he could not do so. He applied for unemployment benefits, which were denied on the ground that he had left work voluntarily without good cause attributable to his employer. The Michigan Employment Security Commission Board of Review affirmed. The Oakland Circuit Court, Hilda R. Gage, J., also affirmed, finding that Schultz had no right to withdraw his resignation. Schultz appealed by leave granted.

During the pendency of the unemployment compensation proceedings, Schultz brought an action for wrongful discharge in the Oakland Circuit Court against John Nichols, the Oakland County Sheriff; James Curtis, a captain in the sheriff's department; and the Oakland County Board of Commissioners, arguing that by refusing to allow him to withdraw his resignation the defendants had constructively discharged him. The court, Hilda R. Gage, J., granted the defendants' motion for summary disposition. Schultz appealed as of right. The appeals were consolidated.

The Court of Appeals *held:*

A deputy sheriff is a public employee rather than a public official. The resignation of a public employee is effective when submitted.

1. MCL 51.70; MSA 5.863, the statute that created the plaintiff's position, as well as case law considering the status of police officers generally, does not evince a legislative intent to

REFERENCES

Am Jur 2d, Sheriffs, Police, and Constables §§ 6, 24; Unemployment Compensation § 59.

Eligibility for unemployment compensation benefits of employee who attempts to withdraw resignation before leaving employment. 36 ALR4th 395.

imbue the position of deputy sheriff with the status of a public office. Nor do the terms of the plaintiff's contract of employment provide any reason to conclude that the plaintiff was a public official.

2. Because the plaintiff was a public employee rather than a public official and because his letter of resignation expressed no intent that it was to become effective at a future date, the resignation took effect immediately upon the tender of the letter to his employer, without a need for any formal acceptance by his employer. Any decision to permit retraction of the resignation lay with the sheriff. Consequently, summary disposition was properly granted in the wrongful discharge action.

3. The resignation, being unconditional by its own terms, became effective, for unemployment compensation purposes, immediately upon its tender to the employer. The plaintiff thereafter could not rescind his notice of resignation, even though the attempt to rescind was made prior to the last scheduled day of work. The hearing referee properly held that the resignation was voluntary and without good cause attributable to the employer and that, accordingly, the plaintiff was disqualified for unemployment benefits.

Affirmed.

1. SHERIFFS AND CONSTABLES — DEPUTY SHERIFFS — PUBLIC OFFICIALS — PUBLIC EMPLOYEES.

A deputy sheriff is a public employee, not a public official (MCL 51.70; MSA 5.863).

2. MASTER AND SERVANT — PUBLIC EMPLOYEES — RESIGNATION FROM EMPLOYMENT.

The resignation of a public employee takes effect immediately upon the tender of an unconditional letter of resignation; there is no need for a formal act of acceptance by the employer; any decision to permit retraction of an unconditional resignation lies with the employer.

3. UNEMPLOYMENT COMPENSATION — RESIGNATION FROM EMPLOYMENT — TERMINATION OF EMPLOYMENT.

An unconditional resignation, for purposes of unemployment compensation, is effective immediately upon tender of notice to the employer and may not be rescinded by the employee, even if the attempt to rescind is made prior to the last day of work.

*Michael L. Odette,* for the appellant.

*Vandeveer Garzia* (by *John J. Lynch*) and *David B. Timmis*), for Oakland County.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Martin J. Vittands,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: SHEPHERD, P.J., and GRIBBS and JANSEN, JJ.

SHEPHERD, P.J. In these actions consolidated for purposes of appeal, plaintiff appeals by leave granted an October 11, 1988, opinion and October 27, 1988, order of the Oakland Circuit Court, affirming a Michigan Employment Security Commission Board of Review decision denying plaintiff unemployment benefits, and as of right from a November 3, 1988, order granting summary disposition for defendants Nichols, Curtis, and Oakland County Board of Commissioners in plaintiff's wrongful discharge action. We affirm for the primary reason that we hold that a deputy sheriff, just as any other police officer, is a public employee rather than a public official or a holder of public office whose resignation is effective as soon as it is submitted.

Plaintiff was an Oakland County deputy sheriff who had been placed on medical leave through December 8, 1986, because of stress. On November 24, 1986, plaintiff submitted a letter of resignation to the sheriff's department, stating that he had decided to change his career and redirect his goals. Plaintiff claims that he attempted to withdraw his letter two days later, but was told he could not do so. In April 1987, plaintiff applied for, but was later denied, unemployment benefits.

The MESC hearing referee found that plaintiff left work voluntarily without good cause attributable to his employer and denied benefits pursuant to MCL 421.29(1)(a); MSA 17.531(1)(a). While plain-

tiff argued before the MESC that his resignation was not voluntary because he was laboring under the deleterious effects of medication and stress when he submitted his resignation, the issue before the trial court became whether plaintiff's termination was involuntary because he had been denied the opportunity to withdraw his resignation. In affirming the MESC Board of Review, the circuit court found that plaintiff had no right to withdraw his resignation.

The focus was much the same in plaintiff's wrongful discharge action, which essentially was premised on the theory that, by refusing to allow plaintiff to withdraw his resignation, defendants constructively discharged plaintiff. The basis of the grant of summary disposition for the defendants in that case is not entirely clear. Defendants' motion for summary disposition was brought pursuant to MCR 2.116(C)(8), on the ground that because plaintiff had no right to withdraw his resignation he failed to state a cause of action. In ruling on the motion, the trial court, after apparently having considered documentary evidence outside the pleadings, not only agreed with defendants' contention, but further found that plaintiff had no claim under *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), because plaintiff's collective bargaining agreement did not provide that termination only would be for just cause and there were no facts to support a claim that plaintiff ever was promised a right to withdraw his resignation. Finally, the order granting defendants' motion states that the court did so pursuant to both MCR 2.116(C)(8) and (10).

Plaintiff first contends that because he was a "public official" as opposed to a "public employee," he was entitled to withdraw his resignation before its acceptance was manifested in the public record

or by the filling of the position. We find, however, that plaintiff was merely a public employee whose resignation was effective on the date it was submitted.

Although the question whether a deputy sheriff is a public official or a public employee appears to be one of first impression, the cases do guide us in making this determination. For example, in *Solomon v Highland Park Civil Service Comm,* 64 Mich App 433, 437-438; 236 NW2d 94 (1975), this Court held that a city police officer was not a "public officer." In doing so, we stated:

> A public officer in the general everyday acceptance of the term is a special classification of those involved in government at what may be described as in an executive classification, whether his elevation to that status is elective or appointive. His compensation is fixed by legislative action, state or local. He does not collectively bargain for his wages or working conditions, and in no case that we know of are his duties and the standard of performance therefor agreed on by labor contracts. We think this is what Chief Justice COOLEY meant by what he said in 1879:
>
> "An office is a special trust or charge created by competent authority. If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual, who for the time will be the officer. The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or non-feasance in office, and usually, though not necessarily, in the tenure of his position." *Throop v Langdon,* 40 Mich 673, 682-683 (1879).

We recognize authority to the contrary but we

opt to follow what we think was the thrust of his definition. If appellee as a policeman is a "public officer" of Highland Park, then every state policeman is a "public officer" of the State of Michigan. We reject that contention.

Again, in *Burnett v Moore,* 111 Mich App 646, 648-649; 314 NW2d 458 (1981), this Court found that a state trooper was not a public official, deeming it significant that, while a state police officer has some discretion in the performance of the job, the officer has to answer to authorities such as the director of the state police and other officials in the chain of command, in addition to the law itself. Finally, our Supreme Court has held that the determination of whether a particular individual is a public officer or a public employee should be made with an eye toward the legislative intent in framing the particular statute by which the position was created. *People v Freedland,* 308 Mich 449, 457; 14 NW2d 62 (1944).

Here, we do not believe the statute by which plaintiff's position was created, MCL 51.70; MSA 5.863, evinces any legislative intent to imbue the position of deputy sheriff with the status of a "public office." *Burnett, supra,* p 650. Further militating against a finding that plaintiff was a public official are the facts that the terms of plaintiff's employment were governed by a collectively bargained labor contract, and, like any other public enforcement officer, plaintiff had some discretion in the performance of his duties, but nonetheless had to answer to authorities other than the law itself. We cannot discern any reason for distinguishing a deputy sheriff from a state trooper or city or township police officer and, therefore, find that plaintiff was a public employee and not a public official.

Because plaintiff was a public employee and because of the absence of any contrary intention expressed in his resignation, the resignation took effect when it was delivered to the proper authority on November 24, 1986. There was no need for a formal acceptance by the employer to give it effect. "A resignation terminates the employment; it constitutes a complete break in the service, and the absolute termination of relations, and thereafter the person resigning has no rights or duties. After resigning, the employee may not complain of an alleged illegal discharge . . . ." *Stearns v Bd of Fire & Police Comm'rs of the City of Carbondale,* 59 Ill App 3d 569, 573; 375 NE2d 877 (1978), quoting 62 CJS, Municipal Corporations, § 732, p 1052. After plaintiff submitted his letter of resignation, which expressed no intent that it was to become effective at a future date, the decision to accept a retraction of the resignation or to rehire plaintiff lay with the sheriff, as it would with any other employer. See, e.g., *Guy Gannett Publishing Co v Maine Employment Security Comm,* 317 A2d 183 (Me, 1974). Consequently, the trial court did not err in granting summary disposition for the defendants in plaintiff's wrongful discharge action.

Nor do we find error requiring reversal in the trial court's opinion and order affirming the MESC's decision denying plaintiff unemployment benefits. A reviewing court may reverse a decision of the MESC only if the decision is contrary to law or if it is not supported by competent, material, and substantial evidence on the whole record. MCL 421.38(1); MSA 17.540(1); *Johnides v St Lawrence Hosp,* 184 Mich App 172, 175-176; 457 NW2d 123 (1990). As with most similar acts in other states, the general purpose of the Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.,* is to safeguard the general welfare through

the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment. *Grand Rapids Public Schools v Falkenstern,* 168 Mich App 529, 536; 425 NW2d 128 (1988). In light of that purpose, the provisions of the act are liberally construed. Disqualification provisions, however, are to be construed narrowly. *Johnides, supra,* p 177.

At issue is MCL 421.29(1); MSA 17.531(1), a disqualification section which provides in pertinent part:

> An individual shall be disqualified for benefits in the following cases in which the individual:
> (a) Left work voluntarily without good cause attributable to the employer or employing unit.

Even in light of the remedial purpose of the Michigan Employment Security Act, we align ourselves with the majority of jurisdictions which appears to deem a resignation of an employee that is unconditional in its terms to be immediately effective for unemployment compensation purposes a voluntary leaving of the employment without good cause attributable to the employer and, thus, an act which renders the employee ineligible for unemployment benefits. This is so notwithstanding a subsequent attempt to rescind the notice of resignation prior to the actual last day of employment. See, e.g., *Osterhout v Everett,* 6 Ark App 216; 639 SW2d 539 (1982); *Wright v District of Columbia Dep't of Employment Services,* 560 A2d 509 (DC App, 1989); *Batts v Review Bd of Indiana Employment Security Division,* 179 Ind App 405; 385 NE2d 1174 (1979).

We find, then, that plaintiff was properly deemed ineligible for unemployment benefits pursuant to § 29(1)(a). Even though plaintiff later had

a change of heart and attempted to withdraw his resignation, the submission of that letter was voluntary, and there is nothing in the record to indicate that plaintiff's decision to leave his employment was due to good cause attributable to his employer. The trial court therefore did not err in affirming the MESC decision.

Affirmed.