## TOMEI v GENERAL MOTORS CORPORATION

Docket No. 128937. Submitted January 9, 1992, at Lansing. Decided May 4, 1992, at 10:00 A.M.

Edmardo J. Tomei elected to retire rather than be laid off when the General Motors Corporation plant where he worked was closed permanently. Before the plant's closure, Tomei had declined the option of a transfer to another General Motors facility, fearing that his advanced age and low seniority eventually would result in layoff or termination. He then filed a claim for unemployment benefits, which a hearing referee of the Employment Security Commission denied on the basis of a determination that he was disqualified because he had left work voluntarily without good cause attributable to the employer. MCL 421.29(1)(a); MSA 17.531(1)(a). The Employment Security Commission Board of Review and the Genesee Circuit Court, Thomas C. Yeotis, J., affirmed. Tomei appealed.

The Court of Appeals *held:*

In an unemployment compensation case involving the closing of a plant, the burden of proving the voluntariness of the employee's decision to leave employment so as to disqualify the employee from unemployment benefits pursuant to § 29(1)(a) falls first on the employer to demonstrate that the choices it offered the employee were reasonable, viable, and clearly communicated. If the employer fails to carry its burden, the issue of voluntariness is resolved in the employee's favor. However, if the employer succeeds, the employee must prove that the decision to leave work was involuntary.

In this case, General Motors did not prove that it gave reasonable, viable, and clearly communicated choices to Tomei after it informed him of the plant's impending closure. Accordingly, Tomei's election of retirement over layoff cannot be deemed voluntary so as to disqualify him from unemployment benefits.

Reversed.

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 104 *et seq.*

Eligibility for unemployment compensation of employee who retires voluntarily. 88 ALR3d 274.

UNEMPLOYMENT COMPENSATION — ENTITLEMENT TO BENEFITS — IN-
VOLUNTARY DISCHARGE — PLANT CLOSURES.
Where the voluntariness of an employee's termination of employ-
ment is asserted as a basis for denying unemployment benefits
in a case involving the closure of a plant and the options of
alternative placement, layoff, or retirement offered before the
closure, the burden of proving the voluntariness of the employ-
ee's decision to leave employment falls first on the employer to
demonstrate that the choices it offered the employee were
reasonable, viable, and clearly communicated; if the employer
fails to carry the burden, the issue of voluntariness is resolved
in the employee's favor; however, if the employer successfully
carries the burden, the employee then must demonstrate that
the decision to leave work was involuntary (MCL 421.29[1][a];
MSA 17.531[1][a]).

*Arthur A. Busch,* for Edmardo J. Tomei.

*Francis S. Jaworski,* for General Motors Corpo-
ration.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, and *Martin J. Vittands,*
Assistant Attorney General, for the Michigan Em-
ployment Security Commission.

Before: SULLIVAN, P.J., and WAHLS and J. W.
FITZGERALD,* JJ.

J. W. FITZGERALD, J. Edmardo J. Tomei appeals
as of right from a circuit court order affirming the
decision of the Michigan Employment Security
Commission Board of Review that held that he
was ineligible to receive unemployment benefits
under MCL 421.29(1)(a); MSA 17.531(1)(a) because
he voluntarily left his employment with General
Motors Corporation without good cause attribut-
able to his employer. We reverse.

Claimant worked for GMC at its BOC Flint body

* Former Supreme Court justice, sitting on the Court of Appeals by
assignment.

assembly plant from March 6, 1968, until December 18, 1987. In 1985, claimant and other employees were told that the plant would be closing. According to claimant, GMC offered him three choices: to transfer to a Buick plant in the Flint area, to go to the Buick plant at a later time, or to stay at the BOC plant. He chose to stay in the hopes that the plant would remain open. He was afraid that, because of his low seniority (seventeen years) and his age (sixty-four years), he would be either bumped or forced to retire at age sixty-five if he transferred to the Buick plant. Claimant said that in 1984 he had communicated to GMC that he wanted to work until age seventy. When the plant closed, claimant was sixty-six years old and his retirement took effect.

According to the sole witness for GMC, the personnel clerk for hourly workers at the BOC plant, claimant was given three choices concerning his employment. First, claimant could have applied in 1983 and 1984 to go to the Buick plant. She said that even with a seniority date of 1968 (claimant's year of hire), he would have been transferred to Buick sometime in 1985 or 1986, and that the union was aware of this fact. If claimant had applied later, he would still have been transferred to Buick eventually. At the time of the May 12, 1988, hearing, people with seniority dates of 1969 and 1970, i.e., people with less seniority than claimant, were being transferred. Second, claimant could choose to be laid off for up to two years, during which time he would receive benefits and be placed in an area-wide hiring pool. She conceded that GMC had hired or recalled only a "couple" of people from that hiring pool. More importantly, had claimant chosen to be laid off, he could nevertheless have retired at the end of two years, although the witness did not know whether claim-

ant's pension would have been the same under such circumstances. Third, claimant could choose to retire when the plant closed.

Claimant testified that the consequences of the available options were not fully explained by GMC. He had not understood that an early application for transfer to Buick would have resulted in acceptance by GMC. Claimant said that if he had opted for layoff when the plant closed, he would have been sixty-eight years old at the end of that two-year layoff period, and his opportunities for further employment would diminish correspondingly because of his age. Further, he had understood that if he opted for layoff, he would have to be rehired by GMC for at least one day following any layoff in order to qualify for retirement.

The MESC referee concluded that claimant was not entitled to unemployment benefits because he had been given alternatives that a reasonable and prudent employee would accept, and that his retirement, i.e., exercise of the third option, was therefore voluntary. In a split decision, the board of review affirmed on the ground that the referee's decision was in conformity with the law and the facts.

Claimant appealed the review board's decision to the circuit court, which also affirmed. The court concluded that claimant's decision to stay at the plant and retire was a conscious, voluntary decision, although not a wise one, and that he was therefore precluded from receiving unemployment compensation benefits. Claimant appeals, and we reverse on the ground that his separation from employment was involuntary rather than voluntary.

A reviewing court may reverse an MESC decision only if the decision is contrary to law or if it is not supported by competent, material, and substantial

evidence on the whole record. MCL 421.38(1); MSA 17.540(1); *Schultz v Oakland Co,* 187 Mich App 96, 102; 466 NW2d 374 (1991).

The purpose of the Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.*, a remedial act, is to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment. Accordingly, the provisions of the act are liberally construed; disqualification provisions, however, are to be narrowly construed. *Schultz,* 102-103. Section 29(1)(a), the provision at issue in this case, is a disqualification provision and provides in part:

> An individual shall be disqualified for [unemployment] benefits in the following cases in which the individual:
> (a) Left work voluntarily without good cause attributable to the employer or employing unit [MCL 421.29(1)(a); MSA 17.531(1)(a).]

Although disqualification provisions are to be narrowly construed, the state clearly has an interest in reserving unemployment benefits for those who are unemployed because of forces beyond their control. *Parks v Employment Security Comm,* 427 Mich 224; 398 NW2d 275 (1986).

We first address claimant's contention that GMC should bear the burden of proving disqualification under § 29(1)(a) where a plant permanently closes and the employer claims that the employee could have continued work at another facility rather than retire. In this regard, claimant argues that because the employer, not the employee, knows its manpower requirements and has access to all employment records, it is in a better position to establish whether a reasonable choice or alterna-

tive was available to the employee. GMC, on the other hand, argues that although the employer usually bears the burden of establishing a former employee's disqualification from receiving unemployment benefits in misconduct cases, "voluntariness" cases require inquiry into a claimant's behavior in and reasons for terminating employment, and that the claimant should bear the burden of proof because such information lies within the claimant's exclusive knowledge.

This Court has held that an employer does not automatically bear the burden of proof in cases involving employee disqualification for unemployment benefits. *Cooper v University of Michigan,* 100 Mich App 99, 103; 298 NW2d 677 (1980). The *Cooper* Court distinguished between disqualification cases turning on the "good cause" conduct of the claimant and those in which the "conduct, knowledge, reasoning, and control of the employer is critical." *Id.* The burden of proof is on the employer:

> One: When the employee is to be disqualified for benefits due to the employer's [sic] discharge for misconduct. . . . See MCL 421.29(1)(b); MSA 17.531(1)(b). Two: When the employee is to be disqualified for failure to accept "suitable" work offered by the employer. . . . See MCL 421.29(1)(e); MSA 17.531(1)(e). Three: When an employee is to be disqualified because his unemployment is due to a labor dispute in progress. . . . See MCL 421.29(8); MSA 17.531(8).
>
> . . . However, potential disqualification for benefits under MCL 421.29(1)(a); MSA 17.531(1)(a), as here, requires inquiry into whether *plaintiff's* behavior in terminating employment was voluntary and *plaintiff's* reasons for doing so, the answers to these questions being within the exclusive knowledge of the claimant [*Id.*; emphasis in original; citations omitted.]

Strict adherence to *Cooper* places on claimant the burden of proof with regard to the voluntariness of his decision to retire. We are mindful of the current economic climate of this state and the resulting frequency of plant closings. The very frequency of such events requires great numbers of employees such as claimant to confront the likelihood and terms of any future employment with their employers. Employers in these situations have a duty to clearly and accurately relay to their employees the fact of the imminency of a plant closing, what their employment choices are, and adequate, truthful information concerning the consequences of each choice. For where, as here, employees are forced to rely on information from their employers to make informed employment decisions, no subsequent decision concerning whether a claimant voluntarily left employment may be properly addressed before the employer demonstrates that the options it offered to the claimant were not unreasonable, untenable, or illusory. Such information clearly lies within the knowledge, reasoning, and control of the employer. Cf. *Cooper,* 103.

Therefore, we hold that in plant-closing cases, the burden of proof in demonstrating the voluntariness of a claimant's decision to leave employment under § 29(1)(a) first falls on the employer to demonstrate that the choices it offered its employee were reasonable, viable, and clearly communicated to the employee. If the employer fails in carrying its burden such that a clearly communicated offer of viable, reasonable employment choices and their consequences are not demonstrated, the issue of voluntariness must be resolved in the claimant's favor. However, if the employer successfully carries this burden, the burden then shifts to the claimant to demonstrate that the decision to leave work was involuntary in

order to qualify for unemployment benefits. This holding is in keeping with both the purpose of the act and a narrow construction of disqualifying provisions. *Schultz, supra.*

We next address the issue whether an employee who faced the closing of a plant, elected the option to stay at the plant until it closed and then elected retirement rather than layoff voluntarily ceased his employment as a matter of law.[1]

This Court has previously held that the Legislature's use of the word "voluntary" is clear. It connotes a choice between alternatives that ordinary people would find reasonable, and has been defined as unrestrained, volitional, freely chosen, or wilful action. *Clarke v North Detroit General Hosp,* 179 Mich App 511, 515-516; 446 NW2d 493 (1989), aff'd 437 Mich 280, 287; 470 NW2d 393 (1991).

Applying the word "voluntary" to the facts of this case, we conclude that claimant did not leave work voluntarily. Once the BOC plant closing became a reality, claimant was not faced with a choice between reasonable alternatives. The hourly personnel clerk testified that GMC began accepting applications for transfers to the Buick plant in 1983 and 1984. Yet according to the record before us, the announcement that the plant would close was not made until 1985. The actual transfers did not begin until 1985 and 1986, and the Flint BOC plant did not close until nearly the end of 1987. Claimant testified that it was not clear that any application to transfer to Buick would actually be accepted, he feared the likelihood of being laid off because of his age and low

---

[1] The question whether an employee left work "voluntarily" is a matter of law. *Clarke v North Detroit General Hosp,* 179 Mich App 511, 515; 446 NW2d 493 (1989), aff'd 437 Mich 280; 470 NW2d 393 (1991).

seniority even if he was transferred, and he understood that a layoff would disqualify him from later retirement unless he was rehired by GMC for at least one day.[2]

In short, claimant was forced to choose between untenable options in the face of an indeterminate future. Although employment decisions are difficult under the best of circumstances, the mystery and confusion surrounding the decisions claimant had to make rendered it nearly impossible to make an informed, sensible choice. If GMC imparted pertinent, practical information affecting claimant's decision, the record before us does not reflect it.

There is little doubt that claimant wished to continue working until he reached the age of seventy. Even after the plant had officially closed, he worked until December 18, 1987, sweeping and cleaning, and applied to continue working after the first of the year. Under these circumstances, his decision to retire rather than accept a two-year layoff when his plant closed was not a voluntary severance of employment, and the circuit court erred as a matter of law in holding the contrary.

Accordingly, the circuit court's order affirming the MESC decision affirming the referee's determination that claimant was disqualified for unemployment benefits is reversed.

---

[2] We find the facts of this case to be distinguishable from those of *Coleman v Employment Security Comm,* an unpublished opinion per curiam of this Court, decided March 21, 1990 (Docket No. 117120). To the extent that the facts are similar, we disagree with that decision. We are not bound to treat *Coleman* as precedent because it is an unpublished opinion.