*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEONARD WILSON,

      Claimant-Appellant,

v

MEIJER GREAT LAKES LIMITED
PARTNERSHIP and UNEMPLOYMENT
INSURANCE AGENCY,

      Respondents-Appellees.

UNPUBLISHED
July 1, 2021

No. 349078
Ingham Circuit Court
LC No. 18-000711-AE

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Claimant, Leonard Wilson, appeals by leave granted[1] the trial court order affirming the Michigan Compensation Appellate Commission's (MCAC's) decision that claimant was not eligible for unemployment benefits because under MCL 421.29(1)(a)'s "no show, no call" provision he was considered to have voluntarily left employment. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Claimant worked for Meijer Great Lakes Limited Partnership. Meijer requires "store team members," such as claimant, to call in any absences at least an hour before the start of a scheduled shift. Claimant did not appear for his scheduled shifts on five consecutive workdays (Monday, September 4, 2017, to Friday, September 8, 2017). Although he called in on September 5 to explain that he would not be in that day due to "unusual circumstances," he did not do so before his shift was scheduled to start. The "unusual circumstances" were that claimant had been arrested

---

[1] This Court initially denied claimant's application. *Wilson v Meijer Great Lakes Ltd Partnership*, unpublished order of the Court of Appeals, entered October 1, 2019 (Docket No. 349078). Claimant appealed to the Supreme Court, and that Court remanded to this Court "for consideration as on leave granted." *Wilson v Meijer Great Lakes Ltd Partnership*, 505 Mich 1084 (2020).

-1-

on a narcotic charge and was in jail. The record reflects that the September 5 call was a courtesy call. Claimant could not afford to make additional calls and his employer did not accept collect calls.

The record reflects that claimant was aware that Meijer had a policy of terminating employees after three consecutive days without coming to work or calling in. Further, Meijer's attendance policy required store team members to "provide notice [that the employee will be absent] no less than sixty (60) minutes prior to the shift start time." The policy also provided that "[a]ll team members should notify their leadership of an absence in accordance with the procedures specified by their work location." Because claimant was absent from work for three consecutive days without calling in, his employment was terminated after he did not appear for work on September 8, 2017.

Thereafter, claimant sought unemployment benefits, but was determined (and redetermined) to be ineligible. He appealed and a hearing was set before an administrative law judge (ALJ). In pertinent part, the ALJ determined that claimant was "disqualified from receiving benefits under the voluntary leaving provision, Section 29(1)(b) of the Act, beginning the week ending September 9, 2017." Claimant filed an appeal to the MCAC, which affirmed the ALJ's decision. The MCAC reasoned:

> A claimant who was absent for three days without notice has, as a matter of law, voluntarily left employment. See Section 29(1)(a) of the Act. A claimant is disqualified for benefits if the claimant left work without good cause attributable to the employer. A claimant who left work is presumed to have voluntarily done so without good cause. See Section 29(1)(a) of the Act. Good cause exists when the circumstance which prompted the claimant's leaving would have caused a reasonable, average and otherwise qualified employee to leave. See *Carswell v Share House, Inc[]*, 151 Mich App 392[; 390 NW2d 252] (1986).

> The claimant's separation is considered a leaving as he was absent without notice for 3 days. The claimant was absent without notice because he had been arrested and was jailed. The claimant's arrested [sic] and incarceration were not attributable to the employer. Consequently, the claimant is disqualified from benefits under Section 29(1)(a) of the Act and the ALJ's decision will be affirmed.

Claimant appealed to the circuit court, which affirmed. Relevant to this appeal, the circuit court's interpretation of the third sentence of MCL 421.29(1)(a), the "no show, no call" provision, was consistent with the interpretation used by the ALJ and the MCAC.[2]

---

[2] Effective December 29, 2020, this section was amended. See 2020 PA 258. Relevant to this matter, the third sentence of MCL 421.29(1)(a) now reads, "An individual who is absent from work for a period of 3 consecutive work days or more without contacting the employer in a manner acceptable to the employer and of which the individual was informed at the time of hire *is* considered to have voluntarily left work without good cause attributable to the employer." MCL

## II. STATUTORY INTERPRETATION

### A. STANDARD OF REVIEW

Claimant argues that the court erred in its interpretation of MCL 421.29(1)(a). The proper interpretation of a statute is a question of law this Court reviews de novo on appeal. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 102; 754 NW2d 259 (2008). "Thus, concepts such as 'abuse of discretion' or 'clear error,' which are similar to the standards of review applicable to other agency functions, simply do not apply to a court's review of an agency's construction of a statute." *Id*.

### B. ANALYSIS

This case involves the proper interpretation of MCL 421.29(1)(a). "The primary goal of statutory interpretation is to give effect to the Legislature's intent." *In re Reliability Plans of Electric Utilities for 2017-2021*, 505 Mich 97, 119; 949 NW2d 73 (2020). "Statutory interpretation begins with examining the plain language of the statute." *Id*. "When that language is clear and unambiguous, no further judicial construction is required or permitted." *Id*. "A statutory provision is ambiguous only if it conflicts irreconcilably with another provision or it is equally susceptible to more than one meaning." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014). "A statute is not ambiguous merely because a term it contains is undefined or has multiple definitions in a dictionary, especially when the term is read in context." *Id*. "When construing a statute, we must assign every word or phrase its plain and ordinary meaning unless the Legislature has provided specific definitions or has used technical terms that have acquired a peculiar and appropriate meaning in the law." *Id*.

At all times relevant to this appeal, MCL 421.29(1)(a) provided:

> (1) Except as provided in subsection (5), an individual is disqualified from receiving benefits if he or she:
>
> (a) Left work voluntarily without good cause attributable to the employer or employing unit. An individual who left work is presumed to have left work voluntarily without good cause attributable to the employer or employing unit. *An individual who is absent from work for a period of 3 consecutive work days or more without contacting the employer in a manner acceptable to the employer and of which the individual was informed at the time of hire shall be considered to have voluntarily left work without good cause attributable to the employer.* An individual who becomes unemployed as a result of negligently losing a requirement

---

421.29(1)(a) (emphasis added). As statutes and amendments to statutes are presumed to apply prospectively only absent a "clear, direct, and unequivocal expression" by the Legislature that an amendment apply retroactively, *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 155-156; 725 NW2d 56 (2006), and the amendment to MCL 421.29(1)(a) contains no indication that it would apply retroactively, further references to MCL 421.29(1)(a) are to the version in effect before the 2020 amendment, unless stated otherwise.

for the job of which he or she was informed at the time of hire shall be considered to have voluntarily left work without good cause attributable to the employer. An individual claiming benefits under this act has the burden of proof to establish that he or she left work involuntarily or for good cause that was attributable to the employer or employing unit. An individual claiming to have left work involuntarily for medical reasons must have done all of the following before the leaving: secured a statement from a medical professional that continuing in the individual's current job would be harmful to the individual's physical or mental health; unsuccessfully attempted to secure alternative work with the employer; and unsuccessfully attempted to be placed on a leave of absence with the employer to last until the individual's mental or physical health would no longer be harmed by the current job. . . . [emphasis added.]

Claimant argues that the third sentence of MCL 421.29(1)(a) is ambiguous. We disagree. The word "shall" indicates a mandatory directive. *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). In turn, "consider" is a transitive verb with a number of definitions. *Merriam-Webster's Collegiate Dictionary* (11th ed). To "consider" something can mean to "think about carefully," "to regard or treat in an attentive or kindly way," or "to gaze on steadily or reflectively." *Id*. Those definitions all contemplate thoughtfulness, or "consideration of," a subject. But another definition of the word "consider" is "to come to judge or classify." *Id*.

Based on the phrase "shall be considered," it is clear that it is the last definition that was intended by the legislature. Thus, if the statutory prerequisites are met, the person must be judged or classified as a person who voluntarily left work without good cause attributable to his or her employer. Any other construction would render meaningless the phrase, "shall be." Further, the Legislature did not state in the "no call, no show" provision that anyone should undertake any consideration—i.e., contemplative thought—of the circumstances. Rather, the Legislature used the word, "consider*ed*." Particularly when coupled with the phrase, "shall be," it is clear that the Legislature did not intend for any consideration of the underlying facts and circumstances causing an employee to fail to appear for work for three or more consecutive workdays without contacting their employer. Rather, the "no show, no call" provision of MCL 421.29(1)(a) is, in essence, a definition of one instance where an individual is, as a matter of law, deemed to have voluntarily left work without good cause.

Moreover, provisions must be read in the context of the entire statute so as to produce a harmonious whole. *Macomb Co Prosecuting Attorney v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). Identical language in various provisions of the same act should be construed identically. *The Cadle Co v Kentwood*, 285 Mich App 240, 249; 776 NW2d 145 (2009). Here in addition to the "no call, no show" provision in MCL 421.29(1)(a), the Legislature included another circumstance in which an individual "shall be considered" to have voluntarily left work. Specifically, the fourth sentence of MCL 421.29(1)(a) provides, "An individual who becomes unemployed as a result of negligently losing a requirement for the job of which he or she was informed at the time of hire shall be considered to have voluntarily left work without good cause attributable to the employer." MCL 421.29(1)(a). Clearly, one who has lost a job due to negligence has not done so in what could be described as a truly "voluntary" manner. Claimant's desired interpretation of the "no show, no call" provision would require consideration of the underlying facts and circumstances, and ultimately, a decision whether the individual voluntarily

chose to fail to appear for work without contacting his or her employer. Doing so with regard to the "no show, no call" provision would seem to mean that in the later sentence concerning the loss of a job requirement, which uses the same operative language ("shall be considered"), the same analysis should be used. But doing so would be impossible. One cannot both *negligently* lose a job requirement and *intentionally*—i.e., "voluntarily," lose that same requirement. The obvious answer to this predicament is that the Legislature has deemed certain circumstances equivalent to "voluntarily" leaving work without good cause, even if those circumstances are not actually voluntary.

Claimant attempts to avoid this result by first claiming that the applicable test for determining if one has voluntarily left work was established in 1961 by *Lyons v Appeal Bd of Mich Employment Security Comm*, 363 Mich 201, 216; 108 NW2d 849 (1961). In that case, the Supreme Court interpreted what it meant for one's leaving of employment to be "voluntary." *Id*. at 203-204. The Court was only asked to interpret a provision stating that an individual was disqualified from receiving unemployment benefits if he or she left work voluntarily without good cause attributable to the employer or employing unit. *Id*. at 206-207. In other words, *Lyons* involved what is currently the first sentence of MCL 421.29(1)(a). The Legislature has now statutorily defined a circumstance that amounts to voluntarily leaving work without good cause attributable to the employer or employing unit—being a "no show, no call" for three consecutive workdays. MCL 421.29(1)(a). *Lyons* is not controlling as it did not interpret or apply the statutory language that is at issue in this appeal. Nor could it, given that the applicable statutory language was added to MCL 421.29(1)(a) in 2011—fifty years after *Lyons* was decided. See 2011 PA 269.

Claimant next turns to *Warren v Caro Comm Hosp*, 457 Mich 361; 579 NW2d 343 (1998). That case, too, was decided before the relevant statutory language was added to MCL 421.29(1)(a). *Warren* was, like *Lyons*, a case that turned on the more general question of whether an individual left work voluntarily. The Court held that the question was a two-part inquiry: first, one must ask if the individual left work voluntarily, which depends on the facts and circumstances of the individual case; and second, one must ask if the individual left without good cause attributable to the employer. *Warren*, 457 Mich at 366-367. That inquiry, however, is not relevant to this case. Since *Warren* was decided, the Legislature has created a set of circumstances that, as a matter of law, amounts to leaving work voluntarily without good cause attributable to the employer. Those set of circumstances exist in this case, so there is no need to conduct the analysis stated in *Warren*.

Next, claimant argues that his case is similar to *Tomei v Gen Motors Corp*, 194 Mich App 180; 486 NW2d 100 (1992). But that case also predates the enactment of the statutory language that controls the outcome in the present matter. And, like *Lyons* and *Warren*, *Tomei* asked whether an individual's leaving of employment was truly voluntary. *Tomei*, 194 Mich App at 184-188. In the present case, the question of whether claimant left work voluntarily and without good cause attributable to his employer is governed by the third sentence of MCL 421.29(1)(a). *Tomei* is thus of no relevance.

Claimant also contends that a "strict" construction of MCL 421.29(1)(a) runs counter to the plain language of the statute. However, it is claimant's attempt to rewrite clear and unambiguous statutory language that is improper. In the second sentence of MCL 421.29(1)(a), the Legislature created a presumption that, by leaving work, one has left work voluntarily and without good cause attributable to the employer. Claimant relies on that sentence to argue that this

same presumption should apply to the third sentence of MCL 421.29(1)(a). But the statutory language is clear: simply leaving work creates a presumption that may be rebutted, but failing to come to work for three consecutive workdays, and without contacting the employer in a manner acceptable to the employer, means that, as a matter of law, the individual has left work voluntarily. There is no mention of a "presumption" in the third sentence of MCL 421.29(1)(a); rather, this sentence states that the individual *shall be* considered to have left work voluntarily and without good cause attributable to the employer. There is no room for presumptions when it comes to the circumstances described by the third sentence of MCL 421.29(1)(a).

Claimant argues that the addition of the "no show, no call" provision merely "reclassified what would have been a misconduct case" under MCL 421.29(1)(b), "where the burden is on the employer to prove misconduct—into a voluntary quit case, where the claimant now bears the burden to rebut the voluntary quit provision." Therefore, according to claimant, the Legislature's purpose was simply to shift the burden from the employer to the claimant, not to create a situation where, as a matter of law, the individual is disqualified from receiving benefits. That, however, ignores the plain language of the statute, which clearly and unequivocally says that, where certain circumstances exist, the individual *shall be considered* to have voluntarily left work without good cause attributable to the employer. MCL 421.29(1)(a). Where statutory language is clear and unambiguous, this Court's task in construing the statute begins and ends with that plain language. *Scugoza v Metropolitan Direct Prop & Cas Ins Co*, 316 Mich App 218, 223; 891 NW2d 274 (2016).[3]

Claimant argues that a "strict liability" analysis is not appropriate. The ALJ could have used a different phrase than "strict liability." Indeed, this is not a strict-liability case; claimant bears no "liability" at all. Rather, what is at issue is whether claimant is disqualified from unemployment benefits. But wording aside, the ALJ's intent is clear: where certain circumstances exist, the result is controlled by the statute and follows as a matter of law, without regard to *why* those circumstances came to be. While one might disagree whether that is good policy, the fact of the matter is that the ALJ's construction of the statute is consistent with the plain language used by the Legislature. Whether one chooses to call that "strict liability" or something else is irrelevant.

Claimant notes that the overall purpose of the Act is to provide financial assistance to those who become unemployed, MCL 421.2(1), and that, viewed in that lens, MCL 421.29(1)(a) should not be read as creating any absolute bars to benefits. Claimant also correctly notes that, because the Act is a remedial statute, "it should be liberally construed to achieve its intended goal." *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 417; 565 NW2d 844 (1997). But those general principles cannot change what the Legislature has stated with clarity in MCL 421.29(1)(a): those

---

[3] Moreover, the "misconduct" provision of MCL 421.29(1)(b) did not have any specific language addressing individuals who do not show up for work and do not call in an absence prior to the enactment of 2011 PA 269. See, e.g., MCL 421.29(1)(b), as enacted by 2008 PA 480. Rather, the "no call, no show" provision of MCL 421.29(1)(a) was a new provision added in 2011, via 2011 PA 269, that did not previously exist anywhere in the Act.

who fail to come to work for three consecutive workdays, and have not contacted their employer in a manner acceptable to the employer, cannot receive unemployment benefits. Although the Act's overall purpose is to provide monetary assistance to those who have lost their employment, there are circumstances in which one may lose their employment and also not be entitled to unemployment benefits. The Legislature has created exceptions where, despite the general purpose of the Act, unemployment benefits are simply not available. *Empire Iron Mining Partnership*, 455 Mich at 417-418. This case is one of those exceptions.[4]

### III. CONCLUSION

In sum, the plain meaning of MCL 421.29(1)(a) disqualifies claimant from receiving unemployment benefits. While one can debate whether that is sound public policy, it is the law, and this Court cannot judicially rewrite the statute to conform to what some might wish for the statute to say. "It is not within the authority of the judiciary to redetermine the Legislature's choice or to independently assess what would be most fair or just or best public policy." *Lash v City of Traverse City*, 479 Mich 180, 197; 735 NW2d 628 (2007) (quotation marks and citation omitted).

Affirmed.

/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[4] Claimant also resorts to cases from other jurisdictions regarding those states' own "no call, no show" statutory provisions. But claimant fails to explain whether, in any of those states, the applicable statutory language is the same or similar to that contained in MCL 421.29(1)(a). Without that crucial link, claimant has not proven anything. And in any event, judicial opinions from other jurisdictions would be, at most, persuasive authority. See *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).