Timothy J. EDWARD, Relator,

v.

**SENTINEL MANAGEMENT CO., Respondent,**

Commissioner of Economic Security, Respondent.

No. C1–99–1851.

Court of Appeals of Minnesota.

June 6, 2000.

Rolf E. Gilbertson, Zelle, Hofmann, Voelbel & Gette, L.L.P., Minneapolis, for relator.

Barbara A. Burke, Andrea E. Reisbord, Cousineau, McGuire & Anderson, Minneapolis, for respondent Sentinel Management Co.

Kent E. Todd, St. Paul, for respondent commissioner.

Considered and decided by PETERSON, Presiding Judge, HALBROOKS, Judge, and HUSPENI, Judge.*

## OPINION

HALBROOKS, Judge

As a term of the settlement of his claim for workers' compensation benefits, relator was required to quit his employment. After applying for reemployment benefits, the commissioner's representative determined that relator quit without good reason caused by employer, disqualifying him from receiving benefits. On appeal, relator contends that he was required to terminate his employment to obtain a settlement, constituting good reason to quit his employment. Because relator had the option of remaining employed and continuing to pursue his workers' compensation claim, we hold that relator did not have good reason caused by his employer to quit and, therefore, we affirm.

## FACTS

Relator Timothy Edward was employed as a caretaker/leasing agent by respondent Sentinel Management Company. On November 30, 1996, in the course of his employment, Edward suffered a low back injury. Edward filed a workers' compensation claim with respect to the incident. Despite his injury, Edward was able to perform his job and continued to work full-time without restrictions for Sentinel for several years.

On October 9, 1998, Edward and Sentinel agreed to a settlement of his workers' compensation claim. Under the terms of the settlement, Sentinel was required to pay Edward $30,000. In exchange, Edward agreed to resign his position with

Sentinel effective on the date of the award and to sign a voluntary resignation form. The form stated that Edward voluntarily resigned "[i]n exchange for valuable consideration which has been paid herein." The award and Edward's resignation became effective on November 11, 1998. Edward nevertheless continued to work for Sentinel for another month until he was informed that, pursuant to the settlement agreement and his resignation, he was required to quit.

Edward applied to the Department of Economic Security for reemployment benefits, but the department determined that he was disqualified. Specifically, the department found that Edward had not "quit with good reason caused by the employer." Edward appealed the department's determination to a reemployment insurance judge. The reemployment insurance judge affirmed the department's decision. Edward thereafter appealed to the representative of the Commissioner of Economic Security. The commissioner's representative affirmed the decision of the reemployment insurance judge. This appeal followed.

## ISSUE

Did Edward quit his employment with good reason caused by Sentinel?

## ANALYSIS

■■■ An employee who quits employment is disqualified from reemployment benefits unless the employee "quit the employment because of a good reason caused by the employer." Minn.Stat. § 268.095, subd. 1 (1998). The findings of the commissioner's representative are accorded considerable deference. *White v. Metropolitan Med. Ctr.*, 332 N.W.2d 25, 26 (Minn.1983). Whether an employee had good reason to quit, however, is a question of law. *Wood v. Menard, Inc.*, 490 N.W.2d 441, 443 (Minn.App.1992). This court ex-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

ercises its independent judgment on questions of law. *Ress v. Abbott NW Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989).

■ The legislature has defined a "good reason" as a reason:

(1) that is directly related to the employment and for which the employer is responsible; and

(2) that is significant and would compel an average, reasonable worker to quit.

Minn.Stat. § 268.095, subd. 3 (1998). Once the employer establishes that the employee quit the employment, the burden of proof shifts to the employee to show that he had good reason. *Williams v. Right Step Academy,* 607 N.W.2d 482, 484–85 (Minn.App.2000).

■ Edward argues that his reason for resigning was a "good reason" as defined by Minn.Stat. § 268.095, subd. 3. Because the reason arose from a work-related injury, Edward contends that it was directly related to the employment. Edward further contends that a reasonable person would have accepted the settlement and resigned.

Sentinel and the commissioner argue that the circumstances of this case are analogous to those present where an employee receives incentives for early retirement. In *Kehoe v. Minnesota Dep't of Econ. Sec.,* 568 N.W.2d 889, 890 (Minn. App.1997), the employee accepted a bonus for participating in an early retirement program. The court of appeals affirmed the decision of the commissioner's representative that the employee did not quit with good cause, holding:

When an employee has the choice of remaining employed or voluntarily resigning and receiving a bonus, the termination of his employment is without good cause attributable to his employer.

*Kehoe,* 568 N.W.2d at 891. In so holding, this court adopted the reasoning in a decision of the identical issue made by the Michigan Court of Appeals. *Id.* at 890–91. The Michigan court held that accepting

early retirement benefits and resigning did not constitute good cause. *McArthur v. Borman's, Inc.,* 200 Mich.App. 686, 505 N.W.2d 32, 37 (1993). The court focused on the purpose of unemployment benefits, i.e., to assist those who are unemployed through no fault of their own, and the fact that the employees could have rejected the incentives and continued working. *Id.* at 36.

Absent from the early retirement cases, as well as the present case, is some form of compulsion. To constitute a good reason, the reason must "compel" the employee to quit. Minn.Stat. § 268.095, subd. 3(2). As the supreme court has recognized, "there must be some compulsion produced by extraneous and necessitous circumstances." *Ferguson v. Department of Employment Servs.,* 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976).

In the present case, Edward had two viable options. He could resign and take the settlement offer. Or, he could reject the offer, continue working, and continue to pursue his workers' compensation claim. Edward admits that he was able to perform his employment duties. In fact, he continued to work for Sentinel up through, and even one month past, his date of resignation. Moreover, Edward does not argue that he felt economically coerced into accepting the settlement terms. Instead, he said that he "needed to get away from the worker's comp situation because it was causing stress on [his] marriage" and because he "could not deal with Lisa, the [workers'] compensation case worker."

■ "A good personal reason does not equate with good cause." *Kehoe,* 568 N.W.2d at 891 (quoting *McArthur,* 505 N.W.2d at 37). As with Michigan's Employment Security Act, our reemployment compensation statutory scheme is intended to benefit those who become unemployed through no fault of their own. *Erb v. Commissioner of Econ. Sec.,* 601 N.W.2d 716, 718 (Minn.App.1999). Considering the facts of this case, the analogy to cases

involving incentives for early retirement is well-reasoned. Edward had the option of remaining employed or resigning and chose the latter for personal reasons that were only indirectly related to his employment. Accordingly, we hold that Edward did not have good reason for quitting caused by his employer.[1]

## DECISION

The commissioner's representative did not err by concluding that Edward did not have good reason to quit his employment and that he was disqualified from receiving reemployment benefits.

**Affirmed.**

---

1. We do not imply that an employee who must resign in order to obtain a workers' compensation settlement could never have good reason to quit. For example, in *Larson v. Michigan Employment Sec. Comm'n*, 2 Mich.App. 540, 140 N.W.2d 777, 781 (1966), the Michigan Court of Appeals held that a severely-injured employee who agreed to resign in exchange for a workers' compensation settlement had good cause to quit. The employee in *Larson*, however, was unable to perform his former job duties. *Id.* at 778. The court recognized that of the employee's two alternatives, remaining employed without any income or resigning with income, there was only one tenable alternative. *Id.* at 780. The facts present in *Larson* simply are not present in the instant case. *See McArthur*, 505 N.W.2d at 36 (*Larson* limited to the facts of that particular case).