*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1250**

Wajiha Shirin Shah,
Relator,

vs.

IMI's MN, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed June 15, 2015
Affirmed
Schellhas, Judge
Dissenting, Minge, Judge\***

Department of Employment and Economic Development
File No. 32381001-3

Thomas H. Boyd, Aalok K. Sharma, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for relator)

IMI's MN, Inc., Minnetonka, Minnesota (respondent)

Lee B. Nelson, Munazza Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Minge, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Relator challenges the unemployment-law judge's (ULJ) decision that she is ineligible for unemployment benefits, arguing that the ULJ erred in determining that she quit employment without a good reason caused by the employer and contending that she was constructively discharged. We affirm.

## FACTS

Relator Wajiha Shirin Shah was employed as an optician by respondent IMI's MN Inc. at a Pearle Vision store from February 14, 2011 until October 7, 2013, the effective date of her resignation pursuant to the terms of a settlement agreement with IMI's. Shah, who follows the Islamic faith, accepted employment with the condition that she would not work on Fridays, because Friday is her day of religious observance. General manager Blaine Hein-Harrison told Shah that this would not be a problem. For over two years, Shah was not scheduled to work on Fridays.

In January 2013, Shah met with Maggie Ahrens, assistant general manager, to report that her supervisor, Sheree Froelich, treated her unfairly and created a hostile environment. Shah's reports to Ahrens did not include any complaints about working on Fridays or religious discrimination. In May, Shah found that she was scheduled to work on Friday, May 24. She complained to Froelich, who responded by saying that "[t]hat's how the schedule goes." Shah then wrote a May 16 letter to Hein-Harrison and Froelich,

2

noting that she was scheduled to work on May 24 and that she had brought to Sheree's attention that she "was not available to work on Fridays due to Religion Mosque Prayer day, which was understood and agreed upon by [IMI's] at [her] interview time when [she] was hired 2 ½ years ago. Therefore [she] accepted the position. Just a reminder to give [IMI's] enough time to adjust the schedule." IMI's did not require Shah to work on May 24. But Shah continued to have disputes with Froelich over other issues, and she asserted in a June 20 letter that unfair treatment and a hostile work environment continued.

On June 13, 2013, after Shah learned that IMI's had scheduled her to work on Friday, June 28, Shah wrote to management with a reminder that she could not work on Fridays for religious reasons. IMI's did not require Shah to work on June 28 and thereafter did not schedule her or require her to work on Fridays.

Shah had another scheduling dispute with IMI's when IMI's scheduled her to work on Saturday, July 13 and Sunday, July 14, 2013. Shah sent a letter to management on June 17, objecting to the July weekend scheduling on the ground that she normally had the weekend off and had made other plans. On June 19, Shah had an argument with Froelich concerning whether she had been about to leave work ten minutes before her shift ended. On the same day, IMI's issued a written notice of corrective action regarding the weekend scheduling dispute, stating that it was her responsibility to find a replacement if she was unable to work as scheduled and finding that she had been insubordinate by refusing to listen or follow instructions. This notice of corrective action contains nothing regarding Shah's refusal to work on Fridays. Shah responded with the

June 20 letter, disputing the facts contained in the notice, complaining again that Froelich had subjected her to harassment and unfair treatment, and asserting that, since she had complained about the unfair treatment and hostile environment in January, management had begun scheduling her to work on Fridays. Shah alleged that, since she wrote "a letter [presumably referring to the May 16 letter] on this matter of religious discrimination things [had] escalated and even gotten worse," with the regional manager expressing disappointment in her "for standing [her] ground on this matter."

On June 21, 2013, IMI's management advised Shah by letter that: "Your allegations of harassment by your supervisor, Sheree Froelich, are being taken very seriously by our company. As we make clear to all of our employees, harassment of any kind will not be tolerated within our company." Management went on to state that IMI's was investigating the matter and had changed the staff schedule to limit her time with supervisor Froelich, and IMI's offered Shah the opportunity to work at a different store located nearby. On the same day, June 21, Shah signed a complaint with the Equal Employment Opportunity Commission (EEOC).

Shah responded to IMI's June 21, 2013 letter with two letters, dated June 23. In one letter, she declined the offer to transfer to another store because she felt that it was less desirable and because no resolution had been reached about not scheduling her to work on Fridays. She also complained that she had been scheduled to work the weekend of June 29 and 30, when she previously was scheduled to be off, and that she felt that this was done in retaliation for registering her complaints with management. In the second

4

letter, she reported that she had been told on June 22 that at the new location she would be required to work on Fridays.

Shah continued working through July 14, 2013, and she acknowledged that she was not scheduled to work on Fridays during this period. Shah and IMI's participated in mediation with the EEOC on July 15, but IMI's owner became upset and left before the matter was resolved. Shah, who had an appointment with her doctor the same day, reported suffering from physical symptoms due to anxiety; her doctor recommended an immediate medical leave of absence, which IMI's granted. Her doctor released her to return to work as of August 26, but Shah and IMI's had reentered mediation by that date and their lawyers decided that Shah should remain on leave until the EEOC claim was resolved. After further mediation, Shah and IMI's entered into an EEOC stipulated confidential settlement, in which Shah agreed to resign from her employment effective October 7 and to release IMI's from any and all claims, and IMI's paid Shah consideration in the amount of $25,500.

Shah applied for unemployment benefits in February 2014. Respondent Minnesota Department of Employee and Economic Development (DEED) initially determined Shah eligible to receive benefits, and IMI's appealed the determination. At an evidentiary hearing before a ULJ, an IMI's manager testified that IMI's had sold three of its five optical stores in December 2012 and that one of its employees was on maternity leave, which required that the remaining staff have greater scheduling flexibility. The manager added that, although Shah had been scheduled to work on Fridays in May and June 2013, IMI's responded to her complaints and accommodated her so that she never actually

5

worked on a Friday. Shah testified that, until she filed the charge with the EEOC, her employer was adamant that she had to work on Fridays, but once she filed the EEOC complaint, she was taken off Fridays. She noted that she tried to help the employer by working extra shifts during the week, and she pointed out that IMI's accommodated a part-time employee who was unable to work Wednesdays.

Shah also testified that she had been "forced to resign" because IMI's was not accommodating her need to take Fridays off for religious reasons, although she acknowledged that she had been taken off the schedule for Fridays after she filed the EEOC charge. The settlement agreement has a paragraph entitled "Voluntary and Knowing Action," which provided that Shah

> expressly acknowledges and recites that (i) she has entered into this Agreement knowingly and voluntarily, without any duress or coercion; (ii) she has read and understands this Agreement in its entirety; (iii) she has consulted with an attorney with respect to this Agreement before signing it; and (iv) she has not been forced to sign this Agreement by any employee or agent of IMI's.

Shah testified that, had she returned to work rather than settle her claim, she was not sure and could not predict whether she would have been scheduled to work on Fridays again. Hein-Harrison testified that although the changes in staffing made it increasingly difficult, and they had requested that Shah work on some Fridays, they were willing to accommodate her religious beliefs.

The ULJ decided that Shah is ineligible for unemployment benefits because she quit her employment without a good reason caused by the employer and did not quit

because of religious discrimination. The ULJ affirmed the decision on reconsideration. This certiorari appeal follows.[1]

## DECISION

We review a ULJ's decision to determine, among other things, whether the decision was affected by an error of law. Minn. Stat. § 268.105, subd. 7(d) (2014). This court's review of a question of law is de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). "Whether an employee had good cause to quit is a question of law, which we review de novo." *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012) (quotation omitted). Legal conclusions must be based on findings that have "the requisite evidentiary support." *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006).

### I.

Shah first argues that the ULJ erred in deciding that she did not have a good reason to quit her employment. Generally, an employee who quits employment is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1 (2014). But an employee who quits employment because of a good reason caused by the employer remains eligible for benefits. *Id.*, subd. 1(1). The relevant statutory definition provides:

---

[1] After Shah filed her brief, DEED initially conceded that the ULJ failed to develop the record adequately as to several critical facts, including whether IMI's was willing to accommodate Shah's request to have Fridays off or whether the ULJ found Shah's religious beliefs to be sincere, and asked this court to remand for an additional evidentiary hearing. In its brief, which it filed with the permission of this court so that it could participate in oral argument, DEED did not repeat these concessions or the request for a remand.

7

> A good reason caused by the employer for quitting is a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment.

*Id.*, subd. 3(a) (2014). Generally, an employee encountering an adverse working condition must complain to the employer and give the employer "a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." *Id.*, subd. 3(c) (2014). "A breach of the employment contract constitutes good cause to quit." *Baker v. Fanny Farmer Candy Shops No. 154*, 394 N.W.2d 564, 566 (Minn. App. 1986). And if the employee is subject to a significant unilateral change in the terms of employment, such as a significant reduction in hours, and quits without first complaining to the employer, that employee may retain eligibility for benefits. *Thao v. Command Ctr., Inc.*, 824 N.W.2d 1, 11 (Minn. App. 2012).

Shah argues that IMI's breached her employment contract, giving her good reason to quit, because it scheduled her to work on Fridays twice, once in May and once in June, contrary to her employment agreement. As to the fact that IMI's actually never required her to work on a Friday, Shah responds that scheduling her to work on Fridays constituted the breach, with the actual harm and damage occurring when IMI's employees harassed her for insisting that IMI's honor the terms of their agreement, causing her to suffer health problems, requiring a leave of absence, and giving her good reason to quit.

8

Shah seems to argue that this "breach" may never be corrected and still provides her with good reason to quit under *Thao*, but this claim has no legal support. *Thao* is distinguishable because Shah did not quit immediately when she learned she was scheduled to work on a Friday; instead, she successfully complained to IMI's both times that she was scheduled to work on a Friday, and IMI's corrected its actions. *See id.* And *Baker* is distinguishable because in that case, the employer did not respond to the employee's complaints about being scheduled to work nights, and the employee ultimately quit because of the schedule change. *See* 394 N.W.2d at 565, 567 (holding that employee, who had been hired on condition that she would work only days and complained to employer after being scheduled to work nights, had not waived good cause when she worked nights as scheduled and did not quit until some eight months later). In contrast, IMI's responded to Shah's complaints and did not require Shah to work on the two Fridays on which she was scheduled. In fact, an assistant general manager testified that, because of a shortage of available employees, she worked an extra day to cover a Friday for Shah.

Shah makes the alternative argument that IMI's committed an anticipatory breach of the employment agreement when it scheduled her to work on two Fridays, even though she did not actually have to work them. *See Drydal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 785 n.4 (Minn. 2004) (describing anticipatory breach). That doctrine is not applicable under these circumstances, for the same reason that Shah's arguments above were rejected—namely, because IMI's corrected its actions.

Shah argues that the average, reasonable employee would quit if forced to choose employment over the free exercise of her religion. *See* Minn. Stat. § 268.095, subd. 3(a) (requiring, among other things, that reason must be one that would compel average, reasonable worker to quit and become unemployed rather than remaining in employment). Shah contends that IMI's insistence that she work on Fridays required her to choose between her employment obligations and her religious obligations, in violation of the Free Exercise Clause of the First Amendment. *See* U.S. Const. amend. I; *Hobbie v. Unemp't Appeals Comm'n of Fla.*, 480 U.S. 136, 146, 107 S. Ct. 1046, 1052 (1987) (concluding that denying unemployment benefits to employee who had to choose between his religious belief and continued employment violated his free exercise of religion). But this presupposes that IMI's forced Shah to make this choice; the facts show that IMI's did not force Shah to make this choice because it never required her to work on a Friday. In addition, Shah continued working for three weeks after filing her EEOC complaint, and she acknowledged that she was not scheduled to work on a Friday during that time. Finally, in the settlement agreement, she expressly acknowledged that she had entered into the settlement agreement knowingly and voluntarily, without duress or coercion, and that no employee or agent of IMI's had forced her to sign it. No evidence shows that IMI's forced Shah to choose between employment and the free exercise of her religion.

Shah contends that IMI's offer to transfer her to another store was not a reasonable accommodation, especially when IMI's allegedly told her that she still would have to work some Fridays at that location and other drawbacks existed. *See Rootes v. Wal-Mart*

10

*Assocs.'s, Inc.*, 669 N.W.2d 416, 419 (Minn. App. 2003) ("[T]he legislature has unambiguously provided that, absent employee misconduct, an employee may quit for good reason caused by the employer if there was a substantial adverse change in wages, hours or other terms of employment."). Again, in light of the fact that IMI's did not require Shah to work on the Fridays in question, we need not reach the issue of whether another option was a reasonable accommodation.

Shah challenges the ULJ's decision that she quit employment to accept the settlement and did not quit because of religious discrimination.[2] We have addressed similar situations in caselaw. In *Kehoe v. Minn. Dep't of Econ. Sec.*, this court determined that an employee did not have a good reason to quit caused by the employer when he voluntarily resigned in order to receive early retirement with an incentive. 568 N.W.2d 889, 891 (Minn. App. 1997). As in the present case, the employee argued that the facts showed that he had an independent good reason to quit. *Id.* at 890. This court determined that none of the reasons cited amounted to a significant adverse action by the employer. *Id.* at 890−91(responding to employee's assertions that some duties had been given to other agencies, his advancement possibilities had been quashed, he had thought he would be laid off if he did not resign, and there had been economic pressure to accept the offer). The fact that Shah had been scheduled to work on two Fridays does not show good reason to quit under the circumstances, because, after Shah complained, IMI's did not

---

[2] There are no facts in the record showing that Shah's religious beliefs are anything other than sincere, and we would not in any event accept DEED's concession in its letter in lieu of a respondent's brief that the record was not adequately developed as to this point.

require her to work those Fridays and, after she filed her EEOC complaint, IMI's no longer scheduled her to work on Fridays.

This court reaffirmed its position from *Kehoe* in *Edward v. Sentinel Mgmt. Co.*, 611 N.W.2d 366, 368 (Minn. App. 2000), *review denied* (Minn. Aug. 15, 2000). There, the employee suffered a work-related injury but was still able to perform his job for several years. *Id.* at 367. He and the employer negotiated a settlement of his workers' compensation claim under which he agreed to voluntarily resign in exchange for a payment of $30,000. *Id.* This court noted that the employee had had two options: he could resign and take the settlement offer, as he did, or he could have continued to work and pursue his claim. *Id.* at 368. The employee chose to resign because he found the continuing workers' compensation case stressful and he did not like the person handling his claim. *Id.* As this court noted, "A good personal reason does not equate with good cause." *Id.* (quotation omitted). Likewise, Shah's decision to quit employment and release any and all claims in return for payment of the settlement amount may constitute a good personal reason to quit, but it did not give her good reason to quit employment under unemployment-insurance law.

Shah nevertheless asserts that she was not sure and could not predict whether she would have been scheduled to work Fridays in the future, had she returned to work. We have no way to predict what would have happened, but we must examine the facts in the record, which show that after Shah's complaints to IMI's management and filing of the EEOC complaint, IMI's did not make Shah choose between working and suffering

12

religious discrimination; IMI's corrected the adverse terms of employment.[3] *See* Minn. Stat. § 268.095, subd. 3(c) (requiring that in case of adverse working conditions, employee must complain and give employer opportunity to correct conditions before they will provide good reason for employee to quit). Here, rather than quitting immediately, Shah chose to complain, and she obtained the results she sought. Although she contends that IMI's subjected her to unfair treatment and a hostile environment as a result of religious discrimination, the record shows that the decision to schedule her on Fridays occurred first in May 2013 and that Shah began voicing her complaints to management about unfair treatment and hostile environment—without mention of religious discrimination—in January 2013. Substantial evidence in the record supports the ULJ's decision that Shah quit to accept the settlement and not because of religious discrimination.

## II.

Shah also asserts that IMI's constructively discharged her because IMI's offered her a choice between remaining in employment without a guarantee that her religious preferences would be respected, or signing the confidential settlement agreement and receiving a $25,500 settlement. The concept of constructive discharge is similar to a quit for good reason caused by the employer: the employer is responsible for doing something adverse to the worker that would cause "an average, reasonable worker to quit and

---

[3] We also reject DEED's concession in its letter that the ULJ failed to develop the record adequately as to whether IMI's was willing to accommodate Shah's request to not work on Fridays.

13

become unemployed rather than remaining in the employment." Minn. Stat. § 268.095, subd. 3(c).

An employee is discharged from employment "when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." Minn. Stat. § 268.095, subd. 5(a) (2014). Here, the record does not disclose such a harsh posture by IMI's. Because our prior analysis of according the employer the opportunity to correct the adverse working conditions applies equally to Shah's constructive discharge claim, we reject this claim.

**Affirmed.**

**MINGE**, Judge (dissenting)

I respectfully dissent. The record is clear that when Ms. Shah was employed as an optician, she stated that Fridays were her religious-observance day and that she did not wish to work on that day of the week. The employer, IMI's MN, Inc. d/b/a Pearle Vision (IMI), was apparently aware that Ms. Shah is a member of the Muslim faith and agreed at the commencement of her employment that she would not be expected to work on Fridays. This arrangement was observed for over two years. In May 2013, Ms. Shah's supervisor scheduled her to work on a Friday and did so again in June. Both times Ms. Shah objected. Although IMI otherwise ultimately covered those Friday assignments, Ms. Shah was told that she was subject to being scheduled for Friday work in the future. At this point, Ms. Shah filed a complaint with the federal Equal Employment Opportunity Commission (EEOC). After June 21, 2013, the date of filing the complaint, Ms. Shah continued to work for IMI as an optician for three weeks and then was granted a medical leave of absence that extended to her ultimate resignation. During those last three weeks of work (after the EEOC complaint), IMI did not schedule Ms. Shah to work on a Friday. After July 14, Ms. Shah never returned to work. Ultimately Ms. Shah and IMI settled, it paid her $25,500, and she released it from all claims and resigned her employment. The issue is whether Ms. Shah had a good reason to quit caused by IMI. If so, she is eligible to receive unemployment benefits.

Minnesota law defines "[a] good reason caused by the employer" as follows:

> Subd. 3. **Good reason caused by the employer defined.** (a) A good reason caused by the employer for quitting is a reason:

(1) that is directly related to the employment and for which the employer is responsible;
(2) that is adverse to the worker; and
(3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment.

Minn. Stat. § 268.095, subd. 3(a) (2014).

In this appeal the crucial questions are: Did IMI accommodate Ms. Shah, and was her resignation for reasons other than being scheduled to work on Fridays? The ULJ found that the employer so accommodated Ms. Shah and that she did not resign because of religious discrimination but rather because of her medical condition. The support in the record for this accommodation finding is that IMI covered for Ms. Shah's absence on the two Fridays for which she had been scheduled, IMI had not actually scheduled her for a Friday during the three weeks she worked after she filed her EEOC complaint, and that in response to questioning by the ULJ Ms. Shah testified that she did not know whether IMI would schedule her for Friday work in the future.

The record is also clear that when the EEOC proceeding was pending and there was mediation, Ms. Shah experienced aggravated anxiety that affected her physically and that her doctor recommended that she take a medical leave of absence. There was evidence at the hearing of a variety of work-place conflicts that Ms. Shah had with her supervisor going back to January of 2013. Ms. Shah testified that her aggravated anxiety and resulting medical situation developed in the context of the EEOC proceeding and was related to the tension that she was experiencing in asserting her refusal to work on Fridays, and the half-year conflicts with her supervisor were related to her religion and

not working on Friday. The ULJ never made any findings related to the underlying causation of the medical problems or of the workplace conflict.

At an early stage of this appeal, the attorneys for DEED urged that this court reverse and remand, stating that

> [t]he record is undeveloped on several critical facts that are necessary to determine whether Shah is eligible for unemployment benefits. It is unclear whether Pearle Vision was willing to accommodate Shah's request to have Fridays off; nor is there any finding by the ULJ as to the sincerity of Shah's religious beliefs.
>
> The resolution of these facts is necessary to determine whether Shah had a good reason for quitting her employment with Pearle Vision. Reversal is not appropriate because the evidence doesn't clearly show that Shah was denied reasonable accommodation of her sincerely-held religious beliefs; we simply don't know what happened at the final mediation.

Apparently, DEED abandoned this position because the remand request was not made in the DEED brief or at oral argument.

I concur with DEED's initial request. During the ULJ proceeding, the ULJ asked Ms. Shah whether, if she had returned to work, she expected to be scheduled for Fridays. Essentially, Ms. Shah answered that she did not know, but was concerned about the possible Friday scheduling because IMI had done so earlier. The ULJ did not ask IMI the same question. The ULJ's failure to ask IMI whether it would again schedule Ms. Shah for Friday work leaves a gap in the record. Although in the hearing before the ULJ in the proceeding under review IMI said that it would "try" to accommodate Ms. Shah's Friday day of worship, the record indicates that IMI's last position about Friday scheduling was

communicated in June 2013 when it told Ms. Shah that she would be scheduled for Fridays, as needed. This is a weak and, I would conclude, insufficient effort at accommodation. Although there was a three-week period during the EEOC proceedings when IMI did not so schedule her, that was a short time frame, and a Friday-work requirement for its Muslim employee was the central issue in a legal matter that could give rise to damages. Arguably, the most logical explanations for not scheduling Ms. Shah for Friday work during those three weeks were either to minimize exposure to damages or because no advance schedules were being released. The record is silent.

I note two considerations that counsel this court to proceed cautiously in this case. First, the case involves the religious freedom of a Muslim person, an adherent to a minority faith in our community. The United States Supreme Court has decided that a state-run unemployment compensation program cannot deny benefits to an employee who declines to work on his holy days. *Hobbie v. Unemp't Appeals Comm'n of Florida*, 480 U.S. 136, 136, 107 S. Ct. 1406, 1406 (1987) (syllabus). Second, although there is no "burden of proof" in determining eligibility for unemployment benefits, our statutes provide that

> This chapter is remedial in nature and must be applied in favor of awarding unemployment benefits. Any legal conclusion that results in an applicant being ineligible for unemployment benefits must be fully supported by the facts. In determining eligibility or ineligibility for benefits, any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed.

Minn. Stat. § 268.031, subd. 2 (2014).

D-4

Based on this record and these legal considerations, I would remand for the ULJ to determine: whether the employer, IMI, had made a commitment to accommodate Ms. Shah's religious beliefs by not scheduling her for Friday work, and whether the difficulties Ms. Shah experienced over her Friday day of worship were a material cause of the health problems that led her to accept the quit settlement with IMI. I recognize that in its letter requesting a remand, DEED also states that the ULJ should make a finding that Ms. Shah sincerely held a religious belief as a basis for her Friday-day-of-worship position. Although potentially of relevance, this question never arose in the proceeding. The sincerity of her religious belief has apparently been assumed. On remand, I would direct the ULJ to address that question if deemed necessary or if raised by a party. I would direct the ULJ to reopen the record if needed to address these matters.